WALTER A. WOOD MOWING & REAPING MACH. CO. v. CROLL.

In re J. B. FRUCHEY & SONS' ESTATE.

(Circuit Court of Appeals, Sixth Circuit.   April 4, 1916.)

No. 2761.

1. SALES ☞55—CONSTRUCTION—LAW GOVERNING.

Where the bankrupt resided and did business in Michigan, and the goods claimed by petitioner were received and held there, the construction and effect of the contract under which they were held must be determined by the laws of that state as construed by its Supreme Court.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 2, 153; Dec. Dig. ☞55.]

2. BANKRUPTCY ☞184(2)—TITLE OF TRUSTEE—CONDITIONAL SALE.

Where the contract under which goods were delivered to the bankrupts contemplated a resale by them, provided that the goods and proceeds of sale thereof were to be held by the bankrupts as collateral security and in trust for the seller until the indebtedness to the seller was paid, required the goods to be settled for at fixed times whether already sold or not, and provided that all past-due accounts should draw interest and that the goods and their proceeds should be surrendered to the seller on demand, but were not to become its property, except as they were credited and considered as payments on account, the contract was one of absolute sale, reserving a lien for the purchase price, which must be recorded as required by the laws of Michigan to be valid against the trustee in bankruptcy, and not a conditional sale contract reserving title in the seller.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. ☞184(2).]

3. SALES ☞454—CONDITIONAL SALE—RESERVATION OF TITLE—INCONSISTENT PROVISIONS.

In a contract for the delivery of goods intended for resale, a reservation of title in the seller cannot be sustained unless, taking the entire contract and the circumstances together, the reservation of title is clearly dominant over the right of resale and other inconsistent features of the contract, and the resale can be considered as made by the buyer as agent or consignee of the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. ☞454.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⊛═467—APPEAL—FINDINGS—REVIEW.

 Where the testimony was taken before the referee, his finding of the facts, affirmed by the District Judge, will not be rejected on appeal on anything less than a demonstration of a plain mistake.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⊛═467.]

5. BANKRUPTCY ⊛═303(3)—TITLE OF TRUSTEE—WAREHOUSE RECEIPT.

 On a petition for reclamation of property held by a trustee in bankruptcy, evidence *held* to show that a warehouse receipt given by the bankrupts to petitioner, who had sold the goods under contract of absolute sale, was taken as additional security for the purchase price, not as a transfer of the goods.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462; Dec. Dig. ⊛═303(3).]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Bankruptcy proceeding against J. B. Fruchey & Sons, in which Henry Croll, Jr., was trustee. Petitions by Walter A. Wood Mowing & Reaping Machine Company for reclamation of certain machinery and implements were denied by the referee, and his order affirmed by the District Court, and petitioner appeals. Affirmed.

Kinnane & Lane, of Bay City, Mich., for appellant.
Campbell & Foster, of Gladwin, Mich., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. This case involves two separate petitions for reclamation of certain agricultural machinery and implements sold by petitioner to the bankrupts, and which passed into the possession of their trustee in bankruptcy before the purchase price was paid. The property involved in the first petition was sold under written contract of October 20, 1911; that involved in the second petition under contract of December 21, 1912. As to the latter property the asserted right to reclaim depends *solely* upon whether, as claimed by petitioner, the original sale to the bankrupts was a conditional one, with title reserved in the seller until payment of the purchase price, or whether, as claimed by the trustee, it was an absolute sale, with attempt to reserve a lien by instrument required by the Michigan statute to be filed, and so invalid as against the trustee in bankruptcy for failure to so file.

Petitioner's claim under the first petition rests not only upon an alleged original retention of title under the sales contract of 1911, but also upon a so-called warehouse receipt given by bankrupts to petitioner on December 21, 1912, in connection with a settlement for goods sold to bankrupts under the 1911 contract. The referee denied both petitions to reclaim, and his order was affirmed by the District Court.

[1, 2] Considering first the rights based upon the respective sales contracts: The bankrupts resided and did business in Michigan, and the goods in question were received and held there. The construction and effect of these contracts (which were in writing and in identi-

cal terms) must thus be determined by the law of Michigan, as evidenced by the decisions of the Supreme Court of that state. The contracts of sale plainly contemplated a resale of the goods by the vendees. But while the vendees thereby agree (paragraph 7) to hold the "goods on hand and the proceeds of all sales of all goods received" under the contracts "as collateral security in trust and for the benefit of and subject to the order of" the vendor until all obligations thereunder due the vendor from the vendees are fully paid in cash, and to surrender to the vendor on demand, at any time, all goods received by the vendees under the contracts, as well as their proceeds, to the extent necessary to pay in full for the goods so sold, they contain other features on their face inconsistent with reservation of title by the vendor.

[3] As pointed out in our decision in Re Stoughton Wagon Company, 231 Fed. 676, —— C. C. A. ——, this day decided, the leading applicable decisions of the Supreme Court of Michigan were considered by this court in the recent cases of Mishawaka Woolen Mills Co. v. Westveer, 191 Fed. 465, 112 C. C. A. 109, and John Deere Plow Co. v. Mowry, 222 Fed. 1, 137 C. C. A. 539, and the conclusion reached therefrom that where goods are intended for resale the reservation of title cannot be sustained as a conditional sale unless, taking the entire contract and circumstances together, the reservation of title is clearly dominant over the right of resale and other inconsistent features of the contract, and that, as expressed in the Mowry Case, such reservation of title can be sustained "only on the theory that the resale is made by the vendee as the agent or consignee of the vendor, by an agency or consignment which underlies the executory sale and which is a continuing one until it is terminated either by the resale or the vendee's personal performance of the conditions, which then, for the first time, vest title in him."

The dominant character of the two contracts of sale here in question must, as was the one involved in the Stoughton Wagon Company Case, be held to be that of absolute sale, with attempt to retain title for the purchase price, provided we are to adhere to our decisions in the Westveer and Mowry Cases. This dominant character of absolute sale is shown not only by the absence of express provision (which was in fact found in the Stoughton contract) that the title to the goods sold and their proceeds shall remain in the seller until settlement is made, and by the provision that such goods and proceeds are to be held by the vendees as *collateral security* (although in trust for the vendor's benefit and subject to its order) until the vendee's indebtedness to the vendor is paid; but by the further requirement that all goods be settled for at fixed times, whether already sold by the vendees or not, the fact that all past due accounts are made to draw interest, that the goods and their proceeds, which by paragraph 7 are to be surrendered to the vendor on demand, are not by such surrender to become its property except as they are to be credited to the vendees and "considered as payment on account" (the notes and accounts so turned over to be indorsed and guaranteed by the vendees), and that countermand by the vendees is forbidden except upon payment "of 20 per cent. of the net amount thereof as agreed liquidated damages."

Here, as in the Stoughton Case, the recent decision of the Supreme Court of Michigan in Mishawaka Woolen Mills Co. v. Stanton, 154 N. W. 48, announced since our decision in the Mowry Case, is urged as settling a rule of decision contrary to our holdings in the Westveer and Mowry Cases. For the reasons stated in our opinion in the Stoughton Case, we are unable to accept this contention, and accordingly adhere to our views expressed in the Westveer and Mowry Cases.

It follows that the second petition for reclamation was properly denied, as was the first petition so far as it rests upon an asserted reservation of title in petitioner under the sales contract of October 20, 1911.

As to the warehouse receipt: November 6, 1912, the bankrupts gave petitioner their unsecured note for $702, due October 1, 1913; which covered binders and mowers then on hand and for which the bankrupts were entitled to be carried another season. This note drew interest after maturity. Settlement for the remaining indebtedness was not then had, apparently because bankrupts were not prepared to pay. December 21, 1912, petitioner took bankrupts' note for $873.75, due six months from date, in payment for all indebtedness, exclusive of the binders and mowers referred to, which were represented by the earlier note for $702, and thus for all other goods, whether sold or unsold. This note for $873.75 drew interest from date, and was secured by "a bunch of farmers' notes" amounting to $773.32 owned by the bankrupts (containing no title clause and turned over to petitioner without reference to whether or not they were taken for goods received by bankrupts under the Wood contracts) and by a mortgage on real estate worth from $250 to $300. On the same day bankrupts gave petitioner a so-called warehouse receipt, whose pertinent provisions (omitting the property described) are printed in the margin.[1]

This receipt included not only the binders and mowers represented by the $702 note of November 7th, but also $260 worth of goods whose purchase price was included in the note for $873.75 given on the same December 21st. The receipt was never filed or recorded anywhere, and the goods covered by it remained continuously in the bankrupts' possession, having been removed to another building only because of the sale of the building in which they had been contained. It was expressly agreed when the receipt was given that in case, and to the extent, of shipments on petitioner's order, credit was to be given bankrupts on their paper. No shipments were ever made or directed, although bankruptcy did not occur until July, 1913.

---

[1] "This will certify that J. B. Fruchey, implement dealers of Beaverton, in the county of Gladwin and state of Michigan, have received of the Walter A. Wood Mowing & Reaping Machine Company ....... as its property the following described goods: ...... I agree to store without expense to said company the above property, safely and securely housed in building located at ......

"I further agree to deliver, without expense to said company, all the above property f. o. b. cars Beaverton, Michigan, promptly upon request of said company or its authorized agents for shipment to such company to such point as may be directed.

"It is understood and agreed that the title to the above described property is now, and shall remain, vested in said company, and that such property shall, under no circumstances, be removed from the location described, or otherwise disposed of, without the express written consent of said company."

[4] The entire testimony on the hearing of the petitions for reclamation was taken in the presence of the referee, who held, as did the District Judge, that the so-called warehouse receipt was merely taken as additional security for the payment of goods sold by petitioner to the bankrupts. This conclusion upon the facts should not be rejected upon anything less than a demonstration of plain mistake. Deupree v. Watson (C. C. A. 6) 216 Fed. 483, 485, 132 C. C. A. 543, and cases cited.

[5] If the conclusion upon the facts was right, the judgment was correct as matter of course. The nature of the receipt involves a question of intent, and the question of intent is one of fact. Careful consideration of the evidence presented constrains us to agree with the conclusions of the referee and the District Judge, notwithstanding the latter was apparently mistaken in the understanding that the warehouse receipt included other goods than those sold under the 1911 contract. Among the significant facts leading to the correctness of the conclusion below are that the receipt was not given at the time the $702 note was taken, but a month and one-half later, and in connection with a settlement under conditions that seemed to require unusual security (indeed, one of the bankrupts testified that the receipt was given at the suggestion of petitioner's representative after the $873.75 note had been given and the collateral notes turned over), that the receipt included property whose payment was provided for in the earlier note, and that the goods to be shipped thereunder were merely to be credited upon the bankrupts' account or paper. We are unable to resist the inference that the whole transaction of December 21st had for its object the securing of existing indebtedness, and that this intent prompted and permeated the so-called warehouse receipt as well as the other transactions of that date. True, petitioner's representative, in reply to a question which one of the notes the "warehouse receipt was given to assume (assure?)" said that it "was taken to cover the goods, *particularly the note due this fall* [2] October, 1913," which would be the $702 note of November 7th; and in reply to the question whether it was taken as additional security to that particular note said, "No, I could not say that, because the goods were already ours, according to the contract, and was simply taken as further acknowledgment of our title to the goods." It is also true that petitioner's representative asserted that the receipt was taken in the forenoon and the $873.75 note not until afternoon. But the conflict as to the order in which the documents were made presents merely a question of fact, and the testimony taken together is not enough to overcome the inference resulting from other testimony in the case, having in mind our conclusion that the original contract was intended as one of absolute sale.

It follows from these views that the judgment of the District Court should be affirmed with costs.

[2] Italics ours.