FORD MOTOR CO. v. UNION MOTOR SALES CO. et al.

(Circuit Court of Appeals, Sixth Circuit. August 1, 1917.)

No. 2941.

1. MONOPOLIES ⊜⟿17(1)—RESTRAINT ON TRADE—PRICE RESTRICTION—RESALE.
    At least subject to limitations, a system of contracts between a manufacturer and retail dealers, whereby it, in connection with absolute sales of its product, attempts to control the resale prices for all sales, by all dealers, is a restraint on trade, invalid both at common law, and, so far as it affects interstate commerce, under Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209.

2. PATENTS ⊜⟿216—SALE OF PATENTED ARTICLES—ABSOLUTE OR CONDITIONAL.
    There is an absolute as distinguished from a conditional sale of patented articles by the manufacturer, the dominant character of the dealing being one of sale with attempt to provide and enforce resale price, and title being reserved in the manufacturer only till full purchase price is paid, with right of repossession only in case of default in such payment, manifestly only to enforce payment, and the manufacturer being under no obligation to take back the articles, though the parties are styled manufacturer licensor and dealer licensee, and the contract in terms grants right and license to use and vend the articles within specified territory, the manufacturer agreeing to sell its products to the dealer, and he agreeing to purchase the articles at specified times, and it being provided that he is in no way the legal representative or agent of the manufacturer, and it being stipulated that he shall pay a certain amount as agreed damages for each failure to observe the agreement to maintain resale prices.

3. PATENTS ⊜⟿216—RIGHTS OF PATENTEE—DICTATING RESALE PRICES.
    A patent gives the patentee no right to dictate price at which patented articles absolutely sold by him shall be resold by the purchaser, and so no right to restrain sale at less than the price attempted to be fixed by the patentee by a third person buying from the purchaser from the patentee at less than such price, with knowledge of the contract between the patentee and such purchaser attempting to fix the resale price.

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by the Ford Motor Company against the Union Motor Sales Company and others. From a decree dismissing bill (225 Fed. 373), plaintiff appeals. Affirmed.

Alfred Lucking, of Detroit, Mich., for appellant.
Hon. Judson Harmon, of Cincinnati, Ohio, for appellees.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff is a manufacturer, seller and distributor of automobiles, important and essential parts of which are patented. It marketed its product under a so-called "license system," by which dealers purchased the automobiles and were given definite and restricted territory, and in turn agreed to resell only at plaintiff's full list prices. Ford automobiles could thus be obtained at no less price except by inducing Ford dealers to break their agreement with plaintiff. Defendants obtained Ford machines from a dealer or dealers, and sold them and advertised to sell them at less than plaintiff's regular price list. Plaintiff filed its bill to restrain this interference with its

business. Upon final hearing on pleadings and proofs the bill was dismissed. (D. C.) 225 Fed. 373. The appeal is from the decree of dismissal. The ultimate questions concern the validity and enforceability of the price-restricting agreement involved.

[1] At least subject to certain limitations hereafter stated, it is the general and well-settled rule that a system of contracts between a manufacturer and retail dealers, by which the manufacturer, in connection with absolute sales of his product, attempts to control the resale prices for all sales, by all dealers, eliminating all competition and fixing the amount which the ultimate purchaser shall pay, amounts to restraint of trade, and is invalid both at common law and, so far as it affects interstate commerce, under the Sherman Anti-Trust Act (Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 400, 31 Sup. Ct. 376, 55 L. Ed. 502; John D. Park & Sons Co. v. Hartman [C. C. A. 6] 153 Fed. 24, 82 C. C. A. 158, 12 L. R. A. [N. S.] 135; Bauer v. O'Donnell, 229 U. S. 1 [The Sanatogen Case] 33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150; United States v. Kellogg Toasted Corn Flake Co. [D. C.] 222 Fed. 725, 728, Ann. Cas. 1916A, 78, decided by three judges of this circuit, sitting under Expediting Act, Feb. 11, 1903, c. 544, 32 Stat. 823 [Comp. St. 1916, §§ 8824, 8825]; Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 28 Sup. Ct. 722, 52 L. Ed. 1086; Straus v. American Pub. Ass'n, 231 U. S. 222, 34 Sup. Ct. 84, 58 L. Ed. 192, L. R. A. 1915A, 1099, Ann. Cas. 1915A, 369; Straus v. Victor Talking Machine Co., 243 U. S. 490, 37 Sup. Ct. 412, 61 L. Ed. 866; Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871), and that, at least as against a purchaser from such dealer, an attempt to enforce a reservation of right to fix the price at which resale shall be had by the vendee is equally futile, notwithstanding the article is patented, provided, as already said, the transfer to the vendee is full and complete (Bauer v. O'Donnell, supra; Straus v. Victor Co., supra).

There can be no doubt that if plaintiff's contracts with its dealers amounted to absolute sales of its automobiles, and if the case otherwise falls within the principles declared in the cases cited, plaintiff was properly denied relief. Plaintiff contends, however, that its case does not fall within the principles stated or the authorities cited; that under its contracts with its dealers a conditional sale only was effected, passing but a qualified or restricted title to the automobiles delivered thereunder; that the restrictions attempted to be imposed by the plaintiff, as patentee, on the purchaser's right to resell are valid, and having been agreed to by the purchaser are binding not only upon him, but upon those purchasing from the dealer with knowledge of the price restriction.

[2] The question of the nature of the contract between plaintiff and its dealers, whether one of absolute or conditional sales of automobiles, lies at the threshold of the controversy. From a consideration of all the terms of the contract, it is clear that it is essentially one of absolute sale. While the contract, which recites plaintiff's ownership of various patents and patent applications, styles plaintiff the "manufacturer licensor" and the purchaser the "dealer licensee," and in

terms grants the "full right and license to use and vend" within the licensed territory automobiles and parts of plaintiff's manufacture, the dominant character of the dealing is plainly one of sale, with attempt to provide and enforce resale price and territorial restrictions.    For example: Plaintiff agrees to "sell its product to the dealer licensee" at certain discounts from list prices, and to allow certain additional rebates scaled on the "net amount of business" done, which plainly means the amount of the dealer's purchases from plaintiff; the dealer agrees to take deliveries and to "purchase the said Ford automobiles" in various months specified.    The title to the articles sold is reserved in plaintiff only until the full purchase price is paid, with right of repossession only in case of default in such payment.    The provision manifestly is designed only to enforce payment.    Plaintiff is under no obligations to take back any of the goods purchased by the dealer, and it is expressly stated that the "dealer licensee is in no way the legal representative or agent of the manufacturer licensor."    For each failure to observe the agreement to maintain resale prices, the dealer agrees to pay $250 as "agreed damages the manufacturer licensor will sustain," and is made subject to forfeiture of his contract at plaintiff's option.    The other provisions of the contract are not sufficiently controlling or important to require mention.  .

Courts will look to the dominant intention of the parties, and, in this view the case is one of absolute, as distinguished from conditional, sale, not only within our decisions generally (Mishawaka Woolen Mfg. Co. v. Westveer, 191 Fed. 465, 112 C. C. A. 109; John Deere Plow Co. v. Mowry, 222 Fed. 1, 137 C. C. A. 539; In re Stoughton Wagon Co., 231 Fed. 676, 145 C. C. A. 562; Wood Mowing, etc., Machine Co. v. Croll, 231 Fed. 679, 145 C. C. A. 565), but within the applicable decisions of the Supreme Court in the Miles, Sanatogen and Victor Cases, supra.    As expressed in the Sanatogen Case (229 U. S. 16, 33 Sup. Ct. 619, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150):

"The title transferred was full and complete with an attempt to reserve the right to fix the price at which subsequent sales could be made. * * * There was no transfer of a limited right to use this invention, and to call the sale a license to use is a mere play upon words."

See in this connection the Victor Case, supra, 243 U. S. at pages 497–501, 37 Sup. Ct. 412, 61 L. Ed. 866.

[3] Turning then to a consideration of plaintiff's rights as patentee: Its counsel states the broad proposition that "this is a case of patented articles, and it is absolutely lawful to create a monopoly in patented articles."    In support of this proposition counsel cite the statement in Bement v. National Harrow Co., 186 U. S. 70, 91, 22 Sup. Ct. 747, 755 (46 L. Ed. 1058), that "the fact that the conditions in the contracts keep up the monopoly or fix prices [in patented articles] does not render them illegal," and the proposition in the Creamery Package Case, 227 U. S. 8, 32, 33 Sup. Ct. 202, 57 L. Ed. 393, to the effect that the owner of a patent has exclusive rights of making, using and selling, which he may keep or transfer, in whole or in part.    Neither of

these cases lends support to the contention that the patent grant confers upon the patentee the right to dictate the price at which patented articles absolutely sold by him shall be resold by his purchaser. In the Bobbs-Merrill Case, supra, which involved the right of an owner of a copyright to restrict the price on resale, it was said (210 U. S. 345, 28 Sup. Ct. 724, 52 L. Ed. 1086) of the Bement Case that:

It was "between the owners of the letters patent as licensor and licensees, seeking to enforce a contract as to the price and terms on which the patented article might be dealt with by the licensee. The case did not involve facts such as in the case now before us, and concerned a contract of license sued upon in the state court, and, of course, does not dispose of the questions to be decided in this case."

The Creamery Package Case merely held, so far as material here, that a contract by which the manufacturer of a patented article appointed another and distinct manufacturer, selling like articles, his exclusive agent for the output of the factory does not violate the Sherman Act. Manifestly, neither of these decisions relates in any way to restrictions upon the right of resale of patented articles purchased absolutely. Not only has the Supreme Court not held that the right given by the patent law extends to a control of the price at which articles absolutely sold by the manufacturer patentee could be resold by his vendee, but that court has repeatedly held the contrary.

In the Sanatogen Case, supra, where it was held that an attempt to reserve the right to fix the price at which a patented article fully and completely transferred should be resold by the vendee is futile under the statute, it was said (229 U. S. 10, 33 Sup. Ct. 617, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150):

"The right to make, use and sell an invented article is not derived from the patent law."

And again (229 U. S. 17, 33 Sup. Ct. 620, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150):

"The right to vend conferred by the patent law has been exercised, and the added restriction is beyond the protection and purpose of the act."

This proposition was recognized and applied in the Victor Case, supra; and see by analogy the Universal Film Case, supra, 243 U. S. at page 513, 37 Sup. Ct. 416, 61 L. Ed. 871.

Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, lends no support to the plaintiff's propositions. In that case contributory infringement was found in the direct sale (to the purchaser of a patented mimeograph) of a kind of ink suitable for use with the machine, with knowledge by the seller of a license restriction that the mimeograph be used only with ink made by the vendor, and with the expectation that the ink sold would be used with the machine. In the Sanatogen Case, supra, the Dick Case was distinguished by the consideration that in that case merely a qualified title passed to the purchaser, while in the Sanatogen Case the absolute title passed; and in the recent Universal Film Case, supra, 243 U. S. 518, 37 Sup. Ct. 416, 61 L. Ed. 871, the Dick Case was distinctly overruled.

Counsel cite several cases thought to be inconsistent with the views we have thus far expressed. Many of these cases were referred to in the Kellogg Case, supra. But it seems enough to say that we find in none of them anything opposed to the propositions we have stated, except so far as such cases are in conflict with the decisions of the Supreme Court, notably in the Sanatogen, Victor and Universal Film Cases, supra. We find nothing in either the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. 730) or the federal Trade Commission Act (Act Sept. 26, 1914, c. 311, 38 Stat. 717 [Comp. St. 1916, §§ 8836a– 8836k]) validating price restrictions by a vendor on resale of property sold absolutely by him.

But counsel contends, and with especial emphasis, that the decisions of the Supreme Court in both the Bobbs-Merrill and Sanatogen Cases were grounded "solely upon the principle that the owner of a patent or copyright cannot qualify the title passed by means of a *mere notice attached to the chattel*, so as to restrict third persons in the sale of such articles"; and it is argued that the instant case is distinguished from the cases mentioned by the existence of express contract between the manufacturer-patentee and the dealer. It is true that in the Bobbs-Merrill Case (which involved a copyrighted book) the whole-sale dealers from whom defendants purchased copies of the book were under no agreement to enforce the terms of the notice by retail dealers, or to restrict their sales to such dealers as would agree to observe the terms stated in the notice, which were that no dealer is licensed to sell at a less price than $1, and that a sale at a less price would be treated as an infringement of the copyright; and there was thus no claim of contract limitation, or license agreement controlling the subsequent sales of the book. The holding (210 U. S. 350, 28 Sup. Ct. 726, 52 L. Ed. 1086) was that the copyright statutes "do not create a right to impose, by notice, such as is disclosed in this case, a limitation at which the book shall be sold at retail by future purchasers, *with whom there is no privity of contract.*" In the Sanatogen Case it does not appear whether or not the jobber from whom appellee (a retailer) purchased the patented article was under contract relations with the patentee's selling agent not to sell below a given price. Upon the package was a "notice to the retailer" in effect similar to that in the Bobbs-Merrill Case. The case was in the Supreme Court on certificate from a Court of Appeals, and the sole question presented was whether the acts of the appellee, in retailing at less than the price fixed in the notice, constituted an infringement of appellant's patent.[1] While the ultimate decision was limited to a negative answer to the question propounded by the Court of Appeals, the principles declared in the opinion would equally deny relief in the case of actual contract between the manu-

---

[1] It is said in the brief of plaintiff's counsel here that the Waltham Watch Company filed a brief in the Sanatogen Case calling to the court's attention that it had certain litigation pending involving the validity of written contracts, and requested the Supreme Court not to decide "any such question." Manifestly, the only question to be passed upon was that propounded by the certificate of the court below.

facturer and the dealer. It was said (229 U. S. 16, 17, 33 Sup. Ct. 619, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150):

"The packages were sold [by the jobber from whom appellee purchased] with as full and complete title as any article could have when sold in the open market, excepting only the attempt to limit the sale or use when sold for not less than $1. * * * The *right to vend* conferred by the patent law *has been exercised*, and the added restriction *is beyond the protection and purpose of the act*. This being so, the case is brought within that line of cases in which this court from the beginning has held that a patentee who has parted with a patented machine by passing title to a purchaser *has placed the article beyond the limits of the monopoly* secured by the patent act."

And again (quoting with approval from Adams v. Burke, 17 Wall. 453, 21 L. Ed. 700, 229 U. S. 18, 33 Sup. Ct. 620, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150):

"When the patentee, or the person having his rights, sells a machine or instrument whose sole value is in its use, he receives the consideration for its use and he parts with the right to restrict that use. The article, in the language of the court, passes without the limit of the monopoly. That is to say, the patentee or his assignee having in the act of sale received all the royalty or consideration which he claims for the use of his invention, in that particular machine or instrument, it is open to the use of the purchaser *without further restriction* on account of the monopoly of the patentees."

All italics in quotations from opinions are ours.

We are unable to see any principle upon which the existence of a contract between the manufacturer and his vendee restricting the price on resale can give right of action against the purchaser from his vendee which is denied in the absence of such contract, but in the presence of a warning notice. In each case the purchaser from the manufacturer's vendee has knowledge of the attempted restriction; in neither case is there privity of contract, between the manufacturer and the purchaser from his vendee; and this feature of lack of privity is prominent in the decision of the Bobbs-Merrill Case, from which we have quoted. Moreover, in the Victor Case the reason given (243 U. S. 497, 37 Sup. Ct. 414, 61 L. Ed. 866) for the proposition that "whatever rights the plaintiff has against the defendants must be derived from the 'license notice' attached to each machine" is that "*no contract rights existed between them*, the defendants being only 'members of the unlicensed general public,' and that the sole act of infringement charged against the defendants is that they exceeded the terms of the license notice by obtaining machines from the plaintiff's wholesale or retail agents, and by selling them at less than the price fixed by the plaintiff."

But the question we are considering is set at rest by the recent decision in the Victor Case, for it there expressly appears (243 U. S. 495, 496, 37 Sup. Ct. 412, 61 L. Ed. 866) that the plaintiff (who was denied relief) had with each of its licensed dealers "a written contract in which all the terms of 'the license notice' are in substance repeated," and that the dealer is authorized to dispose of machines only subject to the conditions expressed in that notice.

The instant case is not distinguished from the otherwise controlling decisions cited by the considerations that here the purchases from the retailers were covert and secret and at less than the restricted prices. While in the Sanatogen Case it does not appear whether the

price at which defendant purchased was below the restricted price, in the Victor Case it was expressly alleged that the dealers were "induced 'covertly and on various pretenses'" to violate their contracts with the plaintiff, and that the sales were at less than the restricted prices.

We see no merit in the contentions earnestly pressed that the plaintiff's price restrictions were incidental only to the building up of its business and procuring the widest possible stable market, and so were reasonable and proper, as being in the interest of the public, especially in that they tended to secure constant, uniform and convenient service (including garage and repair service), which could not be had unless dealers are protected against price-cutting competition. The law cannot "be evaded by good motives"; it is "its own measure of right and wrong, of what it permits or forbids, and the judgment of the courts cannot be set up against it in a supposed accommodation of its policy with the good intention of the parties, and, it may be, of some good results." Standard Sanitary Mfg. Co. v. United States, 226 U. S. 20, 49, 33 Sup. Ct. 9, 57 L. Ed. 107; International Harvester Co. v. Missouri, 234 U. S. 199, 34 Sup. Ct. 859, 58 L. Ed. 1276, 52 L. R. A. (N. S.) 525; Thomsen v. Cayser, 243 U. S. 66, 85, 37 Sup. Ct. 353, 61 L. Ed. 597; United States v. Gt. Lakes Towing Co. (D. C.) 208 Fed. 733, 744.

The earnestness with which the validity of plaintiff's price restrictions has been pressed upon us has seemed to justify the discussion we have made of recent authorities, reference to which, especially the Sanatogen, Victor and Universal Film Cases (the two latter were made since plaintiff's original brief was prepared), so far from showing a tendency to "go back to the firm ground of the right of a patentee to absolutely monopolize the vending, as well as the manufacture and use of the patented article" indicates to our minds a constantly progressive tendency in the opposite direction. The Victor and Universal Film Cases, the latest utterances of the Supreme Court on the questions here involved, have, to say the least, marked no backward step. The invalidity of plaintiff's price restrictions is clearly demonstrated by the decisions we have cited, and no room is thus left for the charge of unfair competition in invading these restrictions.

Of the territorial restrictions we need only say that they cannot make valid a price restriction otherwise invalid.

The decree of the District Court dismissing plaintiff's bill is affirmed.