## STRAUS ET AL., COMPOSING THE FIRM OF R. H. MACY & COMPANY, *v.* VICTOR TALKING MA-CHINE COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 374.   Argued January 12, 1917.—Decided April 9, 1917.

The monopoly of use granted by the patent law can not be made a means of controlling the prices of the patented articles after they have been, in reality even though not in form, sold and paid for.

An attempt by means of "license contracts" with dealers and "license notices" attached to patented machines to retain title in the manufacturer and patent owner until the expiration of the latest patent referred to in such notice, and to limit until the expiration of such period the right of the public to a mere license to use dependent upon observance of conditions in the "license notices," including conditions as to price, will not be regarded as a legitimate exercise of the patent owner's control over the use where, plainly, from the terms of the "license notices" and from the relations established between the patent owner and the dealers through whom the machines are distributed, the object of such reservations and restrictions is to enable the patent owner to fix and maintain the prices at which the machines may be disposed of after they have passed from its possession into the possession of the dealers and the public and after it has received from the dealers the full price which it asks or expects for the machines.

In such case, as to purchasers not in privity with the patent owner, the restrictions of the "license notices" are to be treated as void attempts to control prices after sale, and in buying from the dealers and reselling to the public at prices lower than the notices prescribe such purchasers do not violate the rights secured to the patent owner by the patent law.

230 Fed. Rep. 449, reversed.

THE case is stated in the opinion.

*Mr. Edmond E. Wise* and *Mr. Walter C. Noyes* for petitioners.

*Mr. Hector T. Fenton*, with whom *Mr. Frederick A. Blount* was on the brief, for respondent:

The manner by which the plaintiff obtains the benefit of its patent is by delivering the physical thing, accompanied by a specifically limited use license affixed thereto, on payment by the licensee of a certain initial or cash royalty as a *sine qua non* to the passing of any title or right of possession or use. The licensee thus obtains a qualified title only in the physical thing with a specific and limited license to use under the patents. He acquires possession with full knowledge of the limitations. The paramount license between plaintiff and its distributors passes no title or authority save to act as intermediaries of the plaintiff in delivery of machine or record, and of the specific license for and attached to each machine or record so delivered, to the user. The specific license controlling the title and permitted use is between the plaintiff and the user. A privity of relation between them is created when the intended licensee by paying the initial royalty gains lawful possession of the machine with the license right given therewith, because such license affixed to the machine or record, issuing directly from, signed by, and as the act of the plaintiff, and the acceptance of the machine or record, with such license specific to and affixed to it, and with full knowledge of its terms and limitations, creates such privity of relation.

Defendants, having covertly obtained possession of the physical thing and the limited license to use, without having paid the full initial cash portion of the consideration required by the terms of the license as a condition precedent, acquired no lawful right of possession or limited right to use. The injury to plaintiff in destroying its market and its standard royalty rates for its machines and records by their reselling at even lower rates, is merely an incident in aggravation of the tort of infringing its patents. The action is *ex delicto* and jurisdiction of

the federal courts exists. *Fair* v. *Kohler Die Co.*, 228 U. S. 22; *Healy* v. *Sea Gull Co.*, 237 U. S. 479, 480; *Geneva Furniture Co.* v. *Karpen*, 238 U. S. 254, 260; *Henry* v. *Dick Co.*, 224 U. S. 1.

The Anti-Trust Acts have no applicability. *Standard Sanitary Co.* v. *United States*, 226 U. S. 20, 39–40.

The defendants had full knowledge of the license restrictions and of the portion of the patent monopoly reserved. *Henry* v. *Dick Co.*, *supra; Wood* v. *Carpenter*, 101 U. S. 135, 142; *Shauer* v. *Alterton*, 151 U. S. 607, 622; *American Cotton Tie Co.* v. *Bullard*, 4 Ban. & A. 520.

To qualify the exclusive rights granted by the patent law is to deprive the patentee unjustly of part of the consideration for which he parted with his disclosure. Under the patent laws the patentee may maintain a close monopoly of the rights granted or separately exercise the distinct rights to make, to use, and to sell. He may limit a license to use for specific purposes only, may charge what he thinks proper for permitting invasion of his monopoly, and may contract for his consideration either in money, or by way of conditions on the use, or both. He may impose any conditions "not definitely illegal." *Bement* v. *Harrow Co.*, 186 U. S. 70, 91; *Bauer* v. *O'Donnell*, 229 U. S. 1. The distinction is plain between the property right in the materials composing a machine or the machine as a physical thing, and the right to use it for the purpose and in the manner pointed out by the patent. *Henry* v. *Dick Co.*, *supra*. The rights to make, sell, and use are each substantive, distinct rights, and may be granted or conferred separately by the patentee. *Bauer* v. *O'Donnell*, *supra*. Any invasion of a reserved control over the use is an invasion of the patent. Cases last cited.

The law relating to attempted conditions on resale of unpatented chattels (*Miles Medical Co.* v. *Park*, 220 U. S. 375, 401) has no bearing, nor has the question whether

the transaction amounts to a conditional sale at common law.   For there is no "absolute and unconditional sale which operates to pass the patented thing outside the boundaries of the patent," or indeed any sale at all. Plainly the license restrictions qualify not only the right to use but also the otherwise unlimited title to and right of possession in the machine considered as the physical embodiment of the invention patented and licensed as distinguished from the materials composing it.   There is no unconditional passing of the title.   *Henry* v. *Dick Co.,* *supra.*   Indeed, there is no sale whatever, and the defendants having never acquired either title or right of possession, cannot set up the license affixed to the machine in justification of their infringement.

The decision in the *Dick Case* properly holds that the patented article sold by a patentee with a condition as to use exemplifies two severable rights of property, one arising under the common law, to the physical thing as such, and the other an incorporeal property right in it as the embodiment of a patented invention the exclusive right to use which belongs to the *same* owner.   Hence a sale of the physical thing with a qualification of the right to use it, by a patentee or licensee possessing *both* rights of property, operates not alone as an exercise of the right "to use," conferred by the patent grant, but, in the very nature of things, operates to qualify the title and free right of disposition, of the physical thing which is an exemplification or embodiment of the *invention* so *specifically* licensed.   If the transaction be such that, to use the language of Judge Lowell in *Porter Needle Co.* v. *National Needle Co.,* 17 Fed. Rep. 536, it is clear "the patentee has chosen to dissever the ownership and right of use, and that his intent is not doubtful," then (as found by the majority opinion in the *Dick Case*) it was "the kind of limitation which may lawfully be imposed (by a patentee) upon a purchaser " of his patented machine; and a "law-

ful qualification" upon the use thereof, binding upon the licensee and his assigns with notice.

There is no conflict between the *Dick Case* and *Bauer* v. *O'Donnell*. The ground of dissent in the former had to do with the confining of the use of the machine to materials wholly unpatented. In this case both machines and records are the subject of independent patents. In the *Bauer Case* the patented articles were absolutely sold and an attempt made to limit resale. In the opinion it is so distinguished from the *Dick Case*.

*Mr. Elisha K. Camp, Mr. Daniel N. Kirby* and *Mr. Taylor E. Brown,* by leave of court, filed a brief on behalf of the American Graphophone Company and the Columbia Graphophone Company, as *amici curiæ.*

MR. JUSTICE CLARKE delivered the opinion of the court.

It will contribute to brevity to designate the parties to this proceeding as they were in the trial court—the respondent as plaintiff and the petitioners as defendants.

The plaintiff in its bill alleges: That it is a corporation of New Jersey; that for many years it has been manufacturing sound-reproducing machines embodying various features covered by patents of which it is the owner, and that, for the purpose of marketing these machines to the best advantage, about August 1st, 1913, it adopted a form of contract which it calls a "License Contract" and a form of notice called a "License Notice," under which it alleges all of its machines have, since that date, been furnished to dealers and to the public.

This "License Notice," which is attached to each machine and is set out in full in the bill, declares that the machine to which it is attached is manufactured under patents, is licensed for the term of the patent under which it is licensed having the longest time to run and may be

used only with sound records, sound boxes and needles manufactured by the plaintiff; that only the right to use the machine "for demonstrating purposes" is granted to "distributors" (wholesale dealers), but that these "distributors" may assign a like right "to the public" or to "regularly licensed Victor dealers" (retailers) "at the dealers' regular discount royalty"; that the "dealers" may convey the "license to use the machine" only when a "royalty" of not less than $200 shall have been paid, and upon the "consideration" that all of the conditions of the "license" shall have been observed; that the title to the machine shall remain in the plaintiff which shall have the right to repossess it upon breach of any of the conditions of the notice, by paying to the user the amount paid by him less five per cent. for each year that the machine has been used.  The notice in terms reserves the right to the plaintiff to inspect, adjust and repair the machine at all times and to instruct the user in its use, "but assumes no obligation so to do;" it provides that "any excess use, or violation of the conditions, will be an infringement of the said patents," and that any erasure or removal of the notice will be considered as a violation of the license. Finally, it provides that at the expiration of the patent "under which it is licensed" having the longest time to run the machine shall become the property of the licensee provided all the conditions recited in the notice shall have been complied with and the acceptance of the machine is declared to be "an acceptance of these conditions."

The contract between the plaintiff and its dealers is not set out in full in the bill but it is alleged that since August 1st, 1913, the plaintiff has had with each of its 7,000 licensed dealers a written contract in which all the terms of the "License Notice" are in substance repeated and in addition it is alleged that each dealer "if he has signed the assent thereto" is authorized to dispose of any machines received from "the plaintiff either directly or through a

paramount distributing dealer," but subject to all of the conditions expressed in the "License Notice." It is alleged that this contract contains the provision that "a breach of any of the conditions on the part of the distributor will render him also liable not only for infringement of the patents but for an action on the contract, or other proper remedy."

As to the defendants the bill alleges that they conduct a large mercantile business in New York City; that with full knowledge of the terms of the contract, as described, between the plaintiff and its distributors and of the "License Notice" attached to each machine, the defendants "being members of the general unlicensed public," and having no contract relation with the plaintiff or with any of its licensed distributors or licensed dealers, induced "covertly and on various pretenses," one or more of plaintiff's licensed distributors or dealers to violate his or their contracts with the plaintiff, providing that no machines should be delivered to any unlicensed member of the general public until "the full license price" stated in the "License Notice" affixed to each machine was paid, and thereby obtained possession of a large number of such machines at much less than the prices stated in the "License Notice"; that under the terms of the said license agreement and notice, they have no title to the same, and that they have sold large numbers thereof to the public and are proposing and threatening to dispose of the remainder of those which they have acquired to "the unlicensed general public," at much less than the price stated in the notice affixed to each machine.

The prayer is for an injunction restraining the defendants from selling any of the machines, possession of which they have acquired, from other and further violation of plaintiff's rights under its letters patent and for the usual accounting and for damages.

The District Court regarded the transaction described

in the "License Notice" as in substance a sale which exhausted the interest of the plaintiff in the machine, except as to the right to have it used with records and needles as provided for therein, and this right not being involved in this case it dismissed the bill.  222 Fed. Rep. 524.

On appeal, the Circuit Court of Appeals affirmed this judgment and remanded the case, but with instructions to allow the plaintiff to amend its bill "if it be so advised." 225 Fed. Rep. 535.

The bill was thereafter so amended as to allege that the defendants had in their possession a large number of machines which they had obtained from plaintiff's distributors and dealers at much less in each case than the price stated in the "License Notice," and that they were proposing to dispose of these machines to the "unlicensed general public" at less than the prices stated in the "License Notice" in disregard of plaintiff's rights.

Again the District Court, on the same ground as before, sustained a motion to dismiss the bill, but the Circuit Court of Appeals reversed this holding (230 Fed. Rep. 449) and the case is here for review on certiorari.

The abstract of the bill which we have given, makes it plain: That whatever rights the plaintiff has against the defendants must be derived from the "License Notice" attached to each machine, for no contract rights existed between them, the defendants being only "members of the unlicensed general public;" and that the sole act of infringement charged against the defendants is that they exceeded the terms of the license notice by obtaining machines from the plaintiff's wholesale or retail agents and by selling them at less than the price fixed by the plaintiff.

It is apparent from the foregoing statement that we are called upon to determine whether the system adopted by the plaintiff was selected as a means of securing to the owner of the patent that exclusive right to use its invention which is granted through the patent law, or whether,

under color of such a purpose, it is a device unlawfully
resorted to in an effort to profitably extend the scope of its
patent at the expense of the general public.  Is it the fact,
as is claimed, that this "License Notice" of the plaintiff
is a means or agency designed in candor and good faith
to enable the plaintiff to make only that full, reasonable
and exclusive use of its invention which is contemplated
by the patent law or is it a disguised attempt to control
the prices of its machines after they have been sold and
paid for?

First of all it is plainly apparent that this plan of mark-
eting adopted by the plaintiff is, in substance, the one
dealt with by this court in *Dr. Miles Medical Co.* v. *Park
& Sons Co.*, 220 U. S. 373, and in *Bauer* v. *O'Donnell*,
229 U. S. 1, adroitly modified on the one hand to take
advantage, if possible, of distinctions suggested by these
decisions, and on the other hand to evade certain supposed
effects of them.

If we look through the words and forms, with which the
plaintiff has most elaborately enveloped its purpose, to
the substance and realities of the transaction contem-
plated, we shall discover several notable and significant
features.  First, while as if looking to the future, the
notice, in terms, imposes various restrictions as to title
and as to the "use" of the machines by plaintiff's agents,
wholesale and retail, and by the "unlicensed members
of the public," for itself, the plaintiff makes sure, that the
future shall have no risks, for it requires that all that it
asks or expects at any time to receive for each machine
must be paid in full before it parts with the possession of it.

Second, while in terms the "use" of each machine is
restricted and forfeiture for failure to strictly comply
with the many conditions and requirements of the notice
is provided for, this system, elaborate to the extent of
confusion, fails utterly to provide for entering any evidence
of a qualified title in any public office or in any public

record, and no requirement is found in it for reporting by users or licensees, who may remove from one place to another taking the machine with them, as would very certainly be required if the plaintiff intended to enforce the rights so elaborately asserted in this notice;—if the system were really a genuine provision designed to protect through many years to come the restricted right to "use" and the seemingly qualified title which it purports to grant to dealers and to the public, from being exceeded or departed from.

Third. The fact that under this system "at different times" "large numbers" of machines, as is alleged in the plaintiff's bill, have been "covertly" sold to the defendants by the plaintiff's wholesale and retail agents at less than the price fixed for them is persuasive evidence that the transaction is not what it purports on its face to be. If it were a reasonably guarded plan, really intended to keep the plaintiff in touch with each of its machines until the expiration of the patent of latest date, for the purpose of insisting upon its being used in the manner provided for in the "License Notice" the plaintiff's prompt and sufficient remedy for such an invasion of its right as is claimed in this case would be found in its sales department or rather in its "license" department, and not in the courts. That the plaintiff comes into court with a bill to enjoin the defendants from reselling machines secretly sold to them in large numbers by the plaintiff's agents indicates very clearly that at least until the exigency out of which this case grew, arose, the scheme was regarded by the plaintiff itself and by its agents simply as one for maintaining prices by holding a patent infringement suit *in terrorem* over the ignorant and the timid.

And finally, while the notice permits the use of the machines, which have been fully paid for, by the "unlicensed members of the general public," significantly called in the bill "the ultimate users," until "the expira-

tion of the patent having the longest term to run" (which, under the copy of the notice set out in the bill, would be July 22nd, 1930) it provides that if the licensee shall not have failed to observe the conditions of the license, and the Victor Company shall not have previously taken possession of the machine, as in the notice provided,. then, perhaps sixteen years or more after he has paid for it and in all probability long after it has been worn out or become obsolete and worthless "it shall become the property of the licensee."

It thus becomes clear that this "License Notice" is not intended as a security for any further payment upon the machine, for the full price, called a "royalty," was paid before the plaintiff parted with the possession of it; that it is not to be used as a basis for tracing and keeping the plaintiff informed as to the condition or use of the machine, for no report of any character is required from the "ultimate user" after he has paid the stipulated price; that, notwithstanding its apparently studied avoidance of the use of the word "sale" and its frequent reference to the word "use," the most obvious requirements for securing a *bona fide* enforcement of the restrictions of the notice as to "use" are omitted; and that, even by its own terms, the title to the machines ultimately vests in the "ultimate users," without further payment or action on their part, except patiently waiting for patents to expire on inventions, which, so far as this notice shows, may or may not be incorporated in the machine. There remains for this "License Notice" so far as we can discover, the function only, of fixing and maintaining the price of plaintiff's machines to its agents and to the public, and this we cannot doubt is the purpose for which it really was designed.

Courts would be perversely blind if they failed to look through such an attempt as this "License Notice" thus plainly is to sell property for a full price, and yet to place

restraints upon its further alienation, such as have been hateful to the law from Lord Coke's day to ours, because obnoxious to the public interest.  The scheme of distribution is not a system designed to secure to the plaintiff and to the public a reasonable use of its machines, within the grant of the patent laws, but is in substance and in fact a mere price-fixing enterprise, which, if given effect, would work great and widespread injustice to innocent purchasers, for it must be recognized that not one purchaser in many would read such a notice, and that not one in a much greater number, if he did read it, could understand its involved and intricate phraseology, which bears many evidences of being framed to conceal rather than to make clear its real meaning and purpose.  It would be a perversion of terms to call the transaction intended to be embodied in this system of marketing plaintiff's machines a "license to use the invention."  *Bauer* v. *O'Donnell,* 229 U. S. 1, 16.

Convinced as we are that the purpose and effect of this "License Notice" of plaintiff, considered as a part of its scheme for marketing its product, is not to secure to the plaintiff any use of its machines, and as is contemplated by the patent statutes, but that its real and poorly-concealed purpose is to restrict the price of them, after the plaintiff had been paid for them and after they have passed into the possession of dealers and of the public; we conclude that it falls within the principles of *Adams* v. *Burke,* 17 Wall. 453, 456; and of *Bauer* v. *O'Donnell,* 229 U. S. 1; that it is, therefore, invalid, and that the District Court properly held that the bill must fail for want of equity.

It results that the decree of the Circuit Court of Appeals will be reversed and that of the District Court affirmed.

*Reversed.*

Dissenting:

Mr. Justice McKenna, Mr. Justice Holmes and Mr. Justice Van Devanter.