## DUPLICATOR MFG. CO. v. HEYER.

(Circuit Court of Appeals, Seventh Circuit.  May .12, 1922.  Rehearing Denied
June 9, 1922.)

No. 3030.

I. **Patents ⬳328—965,887, for multiple copying machine, infringed.**

The Flanigan patent, No. 965,887, for a multiple copying machine, *held*
infringed.

2. **Patents ⬳255—Replacement of an element of a combination held a recon-
struction and infringement.**

In a patented multiple copying machine, the copies were printed from a
gelatinous band, which was made an element of the patented combination.
Such band was several feet long and wound over a spool at each end, so
that, if desired, different parts of its length could be successively used.
Each part could be used for making from 30 to 50 copies.  *Held,* that
the replacement of such bands, when worn out, was not repair, but recon-
struction, and that the furnishing of such part by defendant was an in-
fringement.

Alschuler, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Eastern
Division of the Northern District of Illinois.

Suit in equity by the Duplicator Manufacturing Company against
Theodore A. Heyer, doing business as the T. A. Heyer Duplicator
Company.  Decree for defendant, and complainant appeals.  Reversed.

Certiorari granted 260 U. S. ——, 43 Sup. Ct. 89, 67 L. Ed. ——.

Geo. L. Wilkinson, of Chicago, Ill., for appellant.

Samuel W. Banning, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge.  [1, 2] Appellant charged in-
fringement of United States letters patent No. 965,887 to Flanigan for
a multiple copying machine.  In the District Court the bill was dis-
missed for want of equity.  On the 42 claims of the patent, infringe-
ment is alleged of but one, which is:

"42. In a multiple copying machine, the combination with a machine frame,
having on one side thereof a journal bearing and on the opposite side a chuck,
*of a duplicating band,* and *a spool on which said duplicating band is wound,
said spool having at each end a squared chuck-engaging member and cylin-
drical bearing member,* whereby said spool is interchangeable end for end
between said chuck and journal bearing, substantially as described."

The infringement charged is in the making and selling, prior to the
filing of the bill, of spools and of duplicating bands wound thereon,
for use on the patented machine.  The bands are made of a gelatinous
substance well known in the hectograph and copying machine art.  A
master copy of the desired instrument is made by typewriter or other-
wise, with a peculiarly adapted ink, and, the master copy being placed
face down on the surface of the duplicating band, the ink is trans-
ferred from the copy to the band, and from this there may be printed
any desired number of copies up to about 100.  After from 18 to 24

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hours the ink is absorbed from the surface toward the opposite side of the band, and the same surface is ready to be used again in the same way. This particular surface may thus be used from 30 to 50 times, depending upon the number of copies made. With each copy made there is withdrawn from the surface a certain amount of the substance, so that, after using 30 to 50 times with the full number of copies, or a greater number of times where less copies are made, that particular part of the surface is worn out. The bands may be of desired length, in plaintiff's machine usually about 14 feet, and they are initially wound upon one of the spools, and, as used, rolled up on another spool, and a fresh surface presented, without waiting for the first surface to become usable again. The rolling of the band as used greatly facilitates the work, where much copying is to be done. The spools are so constructed that, when the entire roll has passed from one spool to the other and sufficient time has elapsed so that the last of the surface is again usable, the spool upon which it is wound may be placed in the same position as was the first spool, without the need of first winding it onto another spool. This results from the interchangeability of the spools through each end's having a square chuck-engaging member and a cylindrical bearing member.

The alleged infringing acts are admitted, but it is contended that the supplying of the spools and the bands for the machine is not an infringement; appellee maintaining that the purchasers of the machine and licensees under the patent have the right to supply and restore these parts as necessary and proper in the intended use of the machine. Failing in this contention, he urges his right to use the gelatinous band, if not the spool. Appellant sells the machine outright, without undertaking to impose contractual obligations or limitations. It contends that these parts each constitute an element of the combination claim in question, and may not be replaced or supplied by the licensee, or by others for use on its machines, except with appellant's consent, and further that these are not repairs of such a kind as under the law the licensee may himself replace, but are parts of a combination for which it has a monopoly.

The question for determination may be presented thus: Does A. avoid infringement of a patent to B. when, knowing of its intended use, he supplies to C., a user, one or even two elements in the patented combination, because of the fact that such element or elements are of such short life as the recited facts show the spool and band covered by the patent in suit to be? In other words, was the replacement of the spool or band repair or reconstruction? Of the spools there can be no doubt.

What constitutes reconstruction; what repair? Does reconstruction depend upon the lasting and durable qualities of an element? Or, presented differently, is the passing or temporary character of an element decisive of the question of repair? Upon the authority of Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816, these questions must be answered in favor of appellant. The following quoted language, the crux of the decision, is determinative:

"What rights does he [the purchaser] derive from it? * * * Has he a license to repair deterioration, and when does repair become reconstruction? It would seem that on principle, when deterioration of an element has reached the point of unfitness, there is a destruction of the combination, and a renewal of the element is a reconstruction of the combination. And it would also seem on principle that there could be no license implied from difference in the durability of the elements or periodicity in their use."

Appellee relies upon Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500. The opinion is carefully considered and distinguished in the Victor Talking Machine Case. Speaking of the Morgan Envelope Case, the court said in the Victor Talking Machine opinion (213 U. S. 335, 29 Sup. Ct. 506, 53 L. Ed. 816):

"The court, however, stated that there were cases to the effect that the sale of one element of a combination with intention that it should be used with another was an infringement, but decided that they had no application to one where the element made by the alleged infringer was 'an article of manufacture, perishable in its nature, which it is the object of the mechanism to deliver, and must be renewed periodically whenever the device is put to use.' The case, therefore, is not a precedent for the decision of that at bar. Not one of the determining factors there stated exists in the case at bar. If the operative relation of the paper roll to the mechanism was as illustrated (and the court left no doubt that it was), that is, of the log to the saw in the mill, wheat to the rollers which grind it, pins which are produced by a patent machine; in other words, in no more operative relation than a machine and its product are, the invalidity of the combination was hardly questionable. And, besides, it was made a determining circumstance that the paper perished by its use, and a periodical renewal was indicated to be a renewal 'whenever the device was put to use.'"

With the wisdom of the legislation which protects a monopoly in a combination, one element of which calls for frequent renewal, we are not concerned. We are dealing with the legislative enactment, the statute in force, which defines the extent of patentee's grant. So viewing the question in the light of these decisions, we conclude appellee was infringing the patent in suit under the circumstances here disclosed.

The decree is reversed, with costs, and with directions to the District Court to enter a decree in favor of appellant and for an accounting.

ALSCHULER, Circuit Judge (dissenting in part). To my mind the gelatinous duplicating bands should be considered an incident or supply, necessary from time to time to be provided in the contemplated use of this permanent machine, which appellant at its price had sold appellee. It is undisputed that such gelatinous bands are old, and were long in use on other machines of this general kind, and long procurable in the open market, of such dimensions as the purchaser might desire. If used to full capacity, the band lasts about 30 days, and must then be replaced by a new one.

They are comparable to the carbon paper and inked ribbons of typewriting machines. It would scarcely be contended that on sale of an improved typewriter by a patentee thereof, the vendor would retain a monopoly during the patent term for supplying on his terms the ordinary carbon paper and ribbons necessary to make use of it. It

should make no difference, if, as in the case before us, the patentee had succeeded in securing claims (in the parlance of patents), for a combination, in a typewriting machine, of a metallic frame, type bars, type, typewriter ribbon, ink, carbon paper, means for actuating the movement of such ribbon and carbon paper, etc. The inclusion of the ribbon and carbon paper as elements of the combination would make them none the less ordinary supplies for using the machine.

I do not think that the Victor Talking Machine decision, 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816, whereon is rested the majority opinion herein, has application to the facts here appearing. The element there in issue (the disc) of the combination was not a supply, soon consumed in the intended use of the machine. It was pointed out that the element of the disc is not in the proper sense perishable, but, with normal use may be expected to last indefinitely, and it was stated that the supplying of new discs does not fall within the category of replacement or resupply or substitution of worn-out parts. The opinion further states that "the disc is not a mere concomitant to the stylus; it coacts with the stylus to produce the result. Indeed, as we have seen, it is the distinction of the invention, constituting, by its laterally undulating line of even depth and the effect thereof, the advance upon the prior art." Not so the duplicating band, an ordinary consumable supply, "the same yesterday, to-day," and in no wise distinctive.

Appellant, having obtained its price on its absolute sale of the machine, should not be further accorded the monopoly of supplying these bands. To hold otherwise contravenes the spirit of the decisions in Straus v. Victor Talking Machine Co., 243 U. S. 490, 37 Sup. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955; Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Boston Store v. Am. Graphophone Co., 246 U. S. 8, 38 Sup. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447; United Shoe Machinery Corp. et al. v. United States, 258 U. S. ——, 42 Sup. Ct. 363, 66 L. Ed. —— (Apr. 17, 1922).

In my judgment, the decree should be sustained as to the gelatinous bands.