## KODEL ELECTRIC & MFG. CO. et al. v. WARREN TELECHRON CLOCK CO.

### No. 6190.

Circuit Court of Appeals, Sixth Circuit.

Jan. 16, 1933.

Samuel E. Darby, Jr., of New York City (Arthur H. Ewald, of Cincinnati, Ohio, and John S. Bradley, of New York City, on the brief), for appellants.

Charles Neave, of New York City (Taft, Stettinius & Hollister, of Cincinnati, Ohio, Alexander C. Neave, of New York City, Russell A. Warner, of Schenectady, N. Y., and Harold F. Watson, of New York City, on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Defendant below appeals from a decree of validity and infringement of claims 8 and 9 of patent to Henry E. Warren, No. 1,502,494, issued July 22, 1924, for "Time-indicating Apparatus." Claim 8 is typical, and is printed in the margin.[1] The defendant asserts both invalidity of the claims in suit and noninfringement.

At the time of the application for the patent in suit, it was well known that synchronous motor clocks, operated by central station alternating current, would keep accurate time provided the current was kept uniformly at that cycle to which the clock motor was synchronized, but that, if the current supplied was supposed to be of the 60-cycle variety, using that cycle merely for purposes of illustration, and a 60-cycle clock motor was used, but the alternations of the current in fact exceeded 120 per second, or fell below that number, the clock would run faster or slower than complete accuracy demanded. The so-called systems of time distribution in which the alternations of the current were maintained at a substantially uniform rate over a given period of time by the use of a master clock, either through the mediation of the central station operator who compared a synchronous motor clock with an adjacent master clock and increased or decreased the speed of the generator, according to whether the electric clock was running slower or faster than the master clock (see patent to Warren, No. 1,283,431), or in which this speed of the generator was controlled by the use of a differential mechanism between the electric clock and the master clock (see patent to Poole, No. 1,310,372), were also old.

What Warren did in his patent in suit was to devise a single dial indicating mechanism by which variations from the normal or rated cycle of the current could be more accurately recorded and more instantly recognized by the station attendant. He did this by the use of the differential gearing of Poole, and the sole advantage disclosed by the specification is that "the station attendant, therefore, knows exactly what to do by merely looking at one scale and pointer, instead of by comparing two different pointers [or clocks] * * * and he either slows down the alternator 24 or speeds it up, as conditions require." This is said to have enabled accurate regulation and the even maintenance of the current at a given cycle far beyond what was possible theretofore; but the mode of operation of the clock system as a whole remained exactly as it had been.

---

[1] "8. In a clock system, the combination with a central station, an alternating current generator thereat supplying light and power through line conductors extending therefrom, and a series of secondary clocks, including a synchronous motor, at the subscribers' stations connected to said conductors, of means for changing the speed of said generator, a master clock and an indicator at the central station having a hand for indicating directly the departure of the alternations sent out by said central station from the time indicated by said master clock, whereby the attendant may be informed of the proper direction to manipulate said speed-changing means to bring said generator into synchronism with said master clock."

It is unnecessary, in the present case, to pass upon the validity of the claims covering this indicating means as such, or to determine whether the exercise of invention was required in its conception, in view of Poole and that which was already old, the adjacent electric and master clocks serving substantially the same purpose. Except for the descriptive element of the claims in suit of "an [one] indicator at the central station having a [single] hand for indicating directly the departure of the alternations sent out by said central station from the time indicated by said master clock" the claims of earlier patents (such as claim 6 of the patent to Poole, supra) would read directly upon the combination claimed, and we are here and now concerned only with the validity of the claims to a system of time distribution having as one element this direct indicator. It may be conceded that the claims to the separate indicating means are valid. The question is simply whether, upon the improvement of this single indicating device the patentee was entitled to claim the system of time distribution in connection with which, inter alia, the device was useful and to be used.

■ In the present case we think this question must be answered in the negative. A patentable combination "is as much a unit in contemplation of law as a single or noncomposite instrument." Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 332, 29 S. Ct. 503, 505, 53 L. Ed. 816. Invention in a combination patent lies in the concept of combining the several elements, whether they be old or new. By the same token, novelty in such a patent is to be found in the fact that the various elements are there for the first time associated in the combination unit, each performing its separate function and all co-operating in the production of the unitary result. If a later invention consist solely of the improvement of one of the devices theretofore forming a part of an old combination, which improvement enables that device to perform its separate function in a more efficient and useful manner, and thereby produces a better result in the operation of the whole or broader combination, but does this without change in mode of operation of that combination, the patentee of the improvement may have a patent which will cover his improvement; but he may not claim the broader combination, merely substituting his improved device for the means theretofore used to perform the same function although less perfectly, for the concept of this combination of means, regarded as a unit, was not

his, and it was not new. The language of this court in Crown Cork & Seal Co. v. Sterling Cork & Seal Co. (C. C. A.) 217 F. 381, 385, is directly applicable to the present case: "* * * having had this conception in 1898 [here 1916, the date of filing his application for patent No. 1,283,431] and having received a patent, he could not have another patent in 1899 [here 1924] which would do more than cover the improvement which he then discovered."

We think that it should also be clear, upon careful consideration, that if the combination claimed as a "clock system" or a "system of time distribution" be thus considered as a unit in which the factor essential to timekeeping accuracy is the uniform maintenance of the rated cycle of the current, the means by which the current is kept at this uniform cycle, or the way in which the synchronous motor clock is constructed, forms no true part of the system claimed. These means, whether they consist of improvements in meter-indicators, the electric generator, the steam engine, the clock, or the transmission system (and all stand on the same footing in their relation to the system as a whole), may well be patentable separately, but in respect of the combination unit claimed they amount to no more than the carrying forward of the old idea; and the alleged new combination differs from the old one only in degree and in superiority of craftsmanship, not in a change in the mode of operation. Under these circumstances the inventor of an improvement in one of the compound elements of the combination is not entitled to a patent for the "system." Burt v. Evory, 133 U. S. 349, 358, 10 S. Ct. 394, 33 L. Ed. 647; Risdon Iron & Locomotive Works v. Medart, 158 U. S. 68, 81, 15 S. Ct. 745, 39 L. Ed. 899. He is entitled to a monopoly only in that which he has in fact invented, and that is a monopoly in the right to manufacture, use, and vend the single element which he has improved.

■ In many aspects a claim to a "system" is directly analogous to a method claim, and method patents relate to modes of acting and not to the tools with which the work is done. Here the active element of the combination is the supply of alternating current of substantially uniform cycle. The meter-indicator of the patent is but one of the tools or instrumentalities by the use of which the station attendant is able to do, in a somewhat better manner, it is true, but nevertheless substantially just what he did before. He has changed the tools with which he works but not the method by which the system as a

whole is operated. No method claim could be drafted which would distinguish the so-called new system from the old. It is the product of all the central station elements, the alternating current supplied, which is the vitalizing and essential factor of operability of the combination claimed, and it is elementary that a patent may not issue for the combination of a machine and the product of such machine.

It has been suggested, and it is here insisted, that when a new element is substituted for an old one in a combination, there is a fortiori a new combination, which, if the result be improved by the substitution, may be patentable as a combination. Bassick Mfg. Co. v. Adams Grease Gun Corp., 52 F.(2d) 36, 38 (C. C. A. 2). Then, it is said, other tests must be applied to determine the exercise of the inventive faculty in combining the several elements, such as whether the introduction of the new element into the combination is obvious, once it appears. Determination of the patentability of the combination is also there said to be assisted by a consideration of whether the new element has functional importance except as a part of the combination claimed. But we do not regard the argument of counsel or the considerations suggested in the cited case as pertinent to the case at bar. Although the argument may be sound enough where the substitution produces a new mode of operation and the improvement in result is truly the product of the reconstructed combination, that is, where there is a material change in the function of one of the elements due to the substitution, it entirely leaves out of consideration the fact that there is no real substitution, in the sense of the patent law, where there is no change in function and the supposedly new element but performs the same function as the old in substantially the same manner.

What we have said, we think, fully distinguishes the present case from the Alemite cases [2] and from Leeds & Catlin v. Victor Talking Machine Co., supra, for in all these it was recognized, held, or conceded that the combination claims were valid—that the association of the mechanical elements in each was new and useful. In none was the present question raised or considered.

But there is still another reason why the complainant is not entitled to a decree in the present action. One of the meter-indicators of complainant was sold unreservedly by it

to the Union Gas & Electric Company, and it is through the use of the current of that company, regulated and controlled by the meter-indicator so sold, that the defendant is said to have infringed the patent. This cannot be. By the sale "the right to the entire use of the invention" passed (Henry v. Dick Co., 224 U. S. 1, 24, 32 S. Ct. 364, 370, 56 L. Ed. 645, Ann. Cas. 1913D, 880), including the right to use the meter-indicator as a part of a time distribution system. This was one of the uses specifically disclosed by the claims and specification. The vendee was known to be a public service corporation engaged in the business of selling current to whomsoever applied, and for any and all of the purposes for which it might be used. The indicator in question thus "passed out of the limits of the monopoly" (Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 432, 14 S. Ct. 627, 630, 38 L. Ed. 500) whether the defendant be regarded as a subscriber to a time distribution system maintained by the Union Gas & Electric Company, or, through the purchase of the current of that company, as the transferee of an interest in the use of the indicator and thus in the license granted to the utility. "The patentee having once received his royalty [profit] upon such device, he cannot treat the subsequent seller or user as an infringer." Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., supra. This is emphasized by a consideration of the true ground of complaint in this action. Complainant does not assert that the current of the Union Gas & Electric Company may not be freely sold by it for the purpose of operating electric clocks of subscribers, or in the maintenance by that company of a system of time distribution. Its sole ground of complaint is that these clocks were not purchased from complainant. Thus a new angle of the now discredited attempts of patentees in various fields to expand the patent monopoly by limitations as to the unpatented materials and supplies necessary to the use of the invention is presented. That such a reservation in the license to the Union Gas & Electric Company would have been invalid must be admitted. Straus v. Victor Talking Machine Co., 243 U. S. 490, 37 S. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955; Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Carbice Corp. v. American Patents Develop. Corp., 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819. But we are asked nevertheless to effect such a purpose for

[2] Hollingshead Co. v. Bassick Mfg. Co., 50 F.(2d) 592 (C. C. A. 6); Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F.(2d) 29 (C. C. A. 6); Bassick Mfg. Co. v. Adams Grease Gun Corp., supra.

the patentee by implication, and by holding that that which the Union Gas & Electric Company could freely do as a licensee, its subscribers may not do because there is a lack of privity between them and the patentee. Not only do we find the necessary privity in the contract relationship between the electric company and its subscribers, but we also think that by necessary implication the subscriber was included within the benefit of the license, although not named at the time. Cf. De Forest Radio Telep. & Telegraph Co. v. United States, 273 U. S. 236, 241, 47 S. Ct. 366, 71 L. Ed. 625. The sale without reservation could have no other effect.

But even were this not so, it is still evident that if the meter-indicator passed out of the limits of the monopoly by reason of its sale, the patentee may no longer assert that its use for one of the very purposes for which it was presumably sold, and in the manner in which it was then intended that it should be used, is in violation of patent rights.

For the reasons above stated, the decree of the District Court is reversed, and the cause is remanded, with instructions to dismiss the bill of complaint.