## SUNBEAM CORP. v. WENTLING.

### No. 10280.

United States Court of Appeals
Third Circuit.

Reargued Oct. 15, 1951.

Filed Nov. 1, 1951.

Rehearing Denied Nov. 19, 1951.

8

S. A. Schreckengaust, Jr., Harrisburg, Pa., for appellant.

Herman T. VanMell, Chicago, Ill. (William H. Peace, II., Ira Jewell Williams, Jr., Thomas Raeburn White and Ira Jewell Williams, all of Philadelphia, Pa., George M. Chapman, New York City, and Stanley A. Weigel, San Francisco, Cal., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

■ .This case is before us for the second time. It was previously reported in 3 Cir., 185 F.2d 903 and the opinion there gives the background of the case. It is here again because of the Supreme Court decision in Schwegmann Brothers v. Calvert Distiller's Corp., 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035. That decision held that a retailer who did not sign a contract for price maintenance is not to be subjected to the schedule of a price maintenance plan. In our former decision we denied Sunbeam protection against Wentling in interstate sales but did affirm the granting of the injunction against intra-state sales at less than the price Sunbeam had fixed. It is now clear in view of the Supreme Court decision that even when we cut down the protection Sunbeam wanted we still gave it more than it should have had. The Supreme Court's conclusion is perfectly clear. One who does not sign a price maintenance contract cannot be subjected to the non-signer provisions of a state fair trade law where interstate commerce is involved. So it would seem, then, that Sunbeam is entitled to no protection at all against Wentling, a non-signer.

■ But Sunbeam comes into court upon rehearing with a second string to its bow. It says that it has valuable trade-mark rights in its razors. It sells these razors through retailers a large number of whom have signed price maintenance contracts. These retailers have to spend a large percentage of their gross receipts in selling costs. If merchandise is sold at a lower price than these retailers can afford to sell they cannot compete successfully against the price cutters and will turn to someone else's razors instead of selling Sunbeam Shave-masters. This is an injury, it is argued, to Sunbeam's trade-mark and should be prevented by law.

The consequences of accepting the argument almost take one's breath away. It is perfectly true that a trade-mark is entitled to protection. Nor does it require any fair trade act to give such protection.

For instance, if Wentling sold his own or someone else's razors as those of Sunbeam he would be in trouble. One of the best established forms for relief against unfair competition is that given against one palming off his goods as those of another.[1] But Wentling does not sell Sunbeam's razors as Wentling's; he sells Sunbeam's razors as Sunbeam's.[2] There is no deception or palming off. Sunbeam says that if Wentling wants to sell its razors below the established price he should take off the identifying

---

1. See Restatement of Torts, §§ 712, 717.

2. Which, according to the Restatement of Torts, § 736, he has an affirmative right to do.

trade-mark. Suppose he did. He certainly could not put on his own mark and sell Sunbeam razors as his, Wentling's. And if he sold them with no mark at all but just as "good electric razors" could not Sunbeam, on the very argument it makes here, complain that Wentling was interferring with its trade-mark by not allowing the customer to know that the good razor which he buys from Wentling is in fact made by Sunbeam? If Sunbeam's argument made to us is sound, we do not see why the other conclusion would not follow. Yet this is the very thing which the Supreme Court, and others, have said Wentling could do.[3]

It would, indeed, be a remarkable result to reach in a competitive economy if we were to say that a manufacturer could make everyone submit to the price he imposes upon sales to the consumer. Even a contract to maintain prices was unlawful prior to the Miller-Tydings amendment to the Sherman Act, 15 U.S.C.A. § 1, as the famous Dr. Miles and Hartman decisions show.[4] To the extent that a manufacturer can get the same result without contract because of some theory of trade-mark protection, competition at the retail level in the sale of trade-marked goods is obviously going to be very much lessened.

A patentee is given a monopoly by legal grant. But even a patentee, who can exclude everyone else from making his patented article, cannot control the price at which others may sell his articles to consumers.[5] The protection given to the owner of a trade-mark certainly should not be greater than that given to the holder of a legal monopoly, the patentee.

Our conclusion here is free from doubt. Sunbeam's rights under the fair trade act against a non-signer are shown by the decision in the Schwegmann case. There are no such rights. Sunbeam's rights against Wentling based on the common law of trade-mark protection are certainly to be recognized but they do not go so far as Sunbeam urges here. The injunction against Wentling must be dissolved.

Wentling put in a counter-claim in the trial court when this case was brought up. That counter-claim was dismissed without consideration because of the position taken with regard to Sunbeam's rights under the fair trade acts. The counter-claim is to be restored and Wentling given an opportunity to make what proof he can under it. We do not pass in any way upon the merits of his counter-claim.

The judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.

3. See, Old Dearborn Co. v. Seagram Corp., 299 U.S. 183, 195, 57 S.Ct. 139, 145, 81 L.Ed. 109. "Section 2 of the act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases."

The Supreme Court has also held that one may use the manufacturer's trade-mark when he repacks and resells the trade-marked goods so long as he does not deceive the public thereby. Prestonettes, Inc. v. Coty, 1924, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731. One may also use the trade-mark on the goods when they are sold second hand so long as he indicates clearly that they are "used" products. Champion Spark Plug Co. v. Sanders, etc., 1947, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386. Moreover, one may buy trade-marked goods and use them in the manufacture of new products which may be advertised to show the use of trade-marked materials in them. Forstmann Woolen Co. v. J. W. Mays Co., D.C.

E.D.N.Y.1947, 71 F.Supp. 459, and D.C. E.D.N.Y.1950, 89 F.Supp. 964. See also Restatement of Torts, §§ 736, 737.

4. Dr. Miles Medical Company v. John D. Park & Sons Co., 1911, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502; John D. Park & Sons v. Hartman, 6 Cir., 1907, 153 F. 24, 12 L.R.A.,N.S., 135.

5. See Bauer v. O'Donnell, 1913, 229 U.S. 1, 33 S.Ct. 616, 57 L.Ed. 1041; Straus, etc., R. H. Macy & Co. v. Victor Talking Machine Co., 1917, 243 U.S. 490, 37 S.Ct. 412, 61 L.Ed. 866; United States v. Univis Lens Co., Inc., 1942, 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408. A patentee may, however, fix by contract the price at which his licensees may sell the patented article. See Bement v. National Harrow Co., 1902, 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058 and United States v. General Electric Co., 1926, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362.