SKEE BALL CO. v. COHEN.

(District Court, E. D. New York. July 14, 1922.)

1. Patents ⊚⊃216—Purchaser of patented article takes subject to restrictions on its use by seller.

A purchaser of a patented article from a user takes only the title the seller had, and subject to any restrictions on its use by him.

2. Patents ⊚⊃216—Patented game, to be used commercially for profit, may be sold, subject to restrictions as to place of use.

A patented game, to be used commercially for profit, by setting it up to be played by the public, and for which a charge is made, may be sold for use only subject to the terms of a license contract restricting its use to a certain locality, and such restriction is valid as to its public use, though the apparatus is sold and paid for.

In Equity. Suit by the Skee Ball Company against Max Cohen. Decree for complainant.

O. H. Droege, of New York City, for plaintiff.
Louis H. Solomon, of New York City, for defendant.

CHATFIELD, District Judge. The plaintiff is the assignee of a patent (No. 905,941, issued December 8, 1908) for a game or amusement device known as a skee ball alley. This device is operated by the throwing of a ball upon the floor of an alley, from which it bounds into certain receptacles that are marked with numbers and a registering device. The total score, from the number of balls thrown, obtained by adding the numbers of the receptacles in which the ball lies, determines the nature of a prize or premium which the thrower of the balls is entitled to. Skill enters to a certain extent into the game, so that it is not an illegal game of chance, and from the testimony it is evident that it is sufficiently popular, so that alleys at resorts like Atlantic City, Coney Island, and Rockaway Beach, are licensed and a profitable return obtained therefrom. Each alley manufactured under this patent is numbered, and has its number burned or stenciled into the frame, so as to be easily identified, and also bears a plate showing the limitation to the licensed territory. It appears from the testimony that the plaintiff had a number of these alleys under license at Atlantic City, and that the defendant was in communication with the licensee of the plaintiff, one Grooket, in Atlantic City.

The unusual feature of this license under the patent is that the document granting the license purports to convey all property in the alleys

themselves, but their use is restricted to a certain area. By this the plaintiff obtains at the outset the total license fee for the entire period of the patent for this particular alley, and transfers the property of the alley itself, so that, if burned up, or destroyed, or worn out, all loss will fall upon the licensee. But at the same time no other licensee can make use of an alley in the immediate neighborhood, and thus get into competition with or ruin the business of the person who has purchased the alley for use in that particular locality only.

We have thus an agreement which was a conveyance of the article, but, so far as the patentee and transferee were concerned, merely a license for a particular territory. As a result of this conveyance, an innocent person might come into possession of or obtain title to one of these alleys, and his use of it could be restricted, by injunction or decree, to the locality within which its use was licensed, only where he had knowledge of the limitation upon the original conveyance.

In the present case the defendant, having obtained the alleys in question at Atlantic City, transferred them to Rockaway, and, having rented spaces, installed these alleys within the range of locality covered by the license agreement of another concessionary of the plaintiff. Upon complaint and investigation, it was found that the alleys were those which had come from Atlantic City, and their identity upon the trial has been sufficiently established. It has also been shown that the license plates were on the alleys and have been removed, but the defendant denies all personal knowledge thereof. The defendant also disclaimed any knowledge of the agreement made by his predecessor, or of any limitation to the locality within which the alleys which he had purchased could be used.

[1] In the first place, the defendant's knowledge of the limitation upon his predecessor's title or right to use the alleys has not been established to such an extent as to justify damages for the use of these alleys prior to the making of a proper demand. But, after the defect in his right to use the alleys had been brought home to the defendant, he has no recourse, except at the hands of his predecessor, who sold him an article of which the use was restricted. Although the license was in form a conveyance, it cannot be held that an innocent purchaser for value of a patented article obtains any more title than his predecessor had to sell.

[2] A license agreement of the sort shown in this case is not contrary to public policy, nor is there any reason to hold that the right to restrict the use of such a device, in order to obtain a fair price therefor and to prevent injurious competition, is contrary to the statutes prohibiting monopolies, or to public policy in its ordinary sense. Nor does the transfer of a game for use by the public of itself import the transfer of all rights with respect thereto. A patented game could not, if sold, be restricted, so that the owner could not play the game anywhere or with anyone. An owner of one of these alleys could use the alley just as he could use a patented ball, if he had purchased it openly and in good faith. But the essence of the defendant's use and the purpose of the purchase is to use the device as a source of business for profit, involving an entirely different proposition from that of playing

the game for the play alone. The purchase of the alleys for commercial operation of itself negatives the claim that the defendant intended to buy a game for the use of the game, separate and apart from its being offered to the public as a moneymaking proposition.

It has been held that the sale of articles covered by a patent cannot be restricted after their unlimited conveyance, and after passing of title thereto with full right to use the article, even when the restriction is plainly stamped or set forth upon the article, so as to give warning to the purchaser, where the purpose of the restriction is to indirectly compel the purchase of other unpatented articles. Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959. Nor can price restriction be reserved after full sale of the patented article. Boston Store v. American Graphophone Co., 246 U. S. 8, 38 Sup. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447; Straus v. Victor Talking Mach. Co., 243 U. S. 490, 37 Sup. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955. Such restriction is in violation of the Anti-Trust Act (Comp. St. § 8820 et seq.). Victor Talking Mach. Co. v. Kemeny (C. C. A.) 271 Fed. 810.

But the present case presents an entirely different question. That question is whether an identified structure, conveyed to a party for sale or for use in a restricted territory, can be freely sold or used in violation of that restriction, by a party who may have obtained it without knowledge of the restriction, but has learned of the defect in his title. The use of an article is usually inherent in the sale. The nature of the article in question is such that it could be used privately without in any way violating patent rights. But its use as a public amusement device, or as a business getter, is a matter of a different nature, and affects immediately the manner and extent of enjoyment of the patentee's rights. It cheapens his price and may entirely destroy the market, instead of increasing the sales by lowering the cost.

The testimony shows sufficiently that the defendant knew that the plaintiff sold its alleys subject only to such restricted use, even if he had no actual knowledge of the warning plate on the alleys which he purchased. The defendant had warning before he attempted to install the particular alleys in question. If a plate had been attached to each alley, prohibiting its use outside of the locality for which it was licensed, and if these plates had been removed, the defendant obtained no better title by showing that he had no knowledge of the license over these machines at the time of purchase. And if, as the testimony indicates in the case at bar, the defendant did have knowledge of the license, he certainly would not be in the position of a bona fide holder without knowledge.

The plaintiff is entitled to a decree, giving him damages representing his usual license fee for the use of the alleys in question, upon which he may be required to grant their use in some area, to be selected by the defendant outside of the licensed area of any other purchaser, if the defendant so elects, or, in the absence of such election, to an absolute injunction against any continuation of the infringing use. The plaintiff is also entitled to recover his damages, and to an accounting

of the profits made by the defendant within the limits of the licensed territory of another, for which the plaintiff undoubtedly must respond in damages to those licensees whose territory has been invaded.

In default, or if necessary to enforce the decree, the plaintiff is entitled to take possession of the alleys in question.