## CREAM TOP BOTTLE CORPORATION v. BAILES et al. *

### No. 667.

Circuit Court of Appeals, Tenth Circuit.

Jan. 3, 1933.

*Rehearing denied February 10, 1933.

Henry D. Ashley, of Kansas City, Mo., and Roland Ford, of Albany, N. Y. (Howard W. Grant, of Kansas City, Mo., on the brief), for appellant.

Elmer E. Martin, of Kansas City, Kan., for appellees.

Before LEWIS and McDERMOTT, Circuit Judges.

## McDERMOTT, Circuit Judge.

Appellant, plaintiff below, is the owner of a patent to Henderson, No. 1,528,480, covering a milk bottle of unusual design and a separator consisting of a disk attached to a stem. The object of the device is to facilitate the taking off the cream from a bottle of milk. The mouth of the patented bottle is larger than the disk of the separator; the neck of the bottle bulges below the mouth, and at the bottom of the bulge is the opening into the bottle proper which is of lesser diameter than the mouth of the bottle and the disk. This hourglass shape permits the separator to be introduced into the mouth of the bottle, and, by seating into the second opening, shut off the milk while the cream in the neck is poured off. It thus appears that the utility of the device consists of using the separator in conjunction with the bottle. Plaintiff does not claim that defendants are using the separator; the claim is that they are using the bottle which, without the separator, is just another bottle. But no point is made of this in the briefs, and since the defendants must prevail on the grounds that are argued, we need not explore that question. For the same reason, we need not decide the issue tendered as to the validity of the patent.

There is little dispute as to the facts. If the plaintiff's patent is valid, which we assume but do not decide, it has the exclusive right to manufacture, to sell, and to use the patented devices. It may transfer such rights collectively or separately. Adams v. Burks, 17 Wall. 453, 21 L. Ed. 700. Plaintiff granted Thatcher the right to manufacture and sell the patented bottle in consideration of Thatcher's agreement that he would sell such bottles only to such customers as the plaintiff designated, and for the same price as an ordinary milk bottle. Plaintiff received no royalty from the manufacturer; it proposed to secure its financial reward for the genius presumptively disclosed by the patent through the grant to milk distributors in the various centers of an exclusive right to use the bottle for the delivery of milk, in consideration of an annual fee. Such a contract was made with the Meyer Sanitary Milk Company of Kansas City, Kan., hereafter referred to as Meyer; by it, plaintiff granted "the exclusive right * * * to use the improved bottles and separators * * * only in Kansas City, Kansas." It was stipulated that if plaintiff was unable to maintain for Meyer the exclusive use of the bottle in his territory, Meyer need no longer pay.

Meyer purchased the bottles from the manufacturer and put them to the only use for which they were designed or suitable, to wit, the distribution of milk. Meyer distributed the milk in accordance with the practices of milk distribution which have prevailed in Kansas City and, as far as we are advised, everywhere else, since dairymen started delivering milk in bottles; that is to say, the filled bottle is left with the customer. If the customer is a store, an initial deposit for each bottle delivered is exacted; but the deposit is refunded when any milk or cream bottle, in good condition, is returned. The housewife making a casual purchase at a

store, either delivers another bottle or makes a like deposit. With the housewife to whom deliveries are regularly made from a wagon, the deposit is not required; but if the housewife fails to exchange bottle for bottle, the driver of the wagon must pay. No effort is made to require the housewife to earmark and return the identical bottle delivered to her; any such effort to burden the housewife would result in the loss of a customer. So, in practice, milk and cream bottles have come to have the attributes of currency; a bottle of milk and cream is left by the delivery man, who picks up two bottles, of any make or kind, in exchange.

Meyer conformed to this practice; he delivered milk in his wry-mouthed bottles, and accepted in exchange ordinary bottles when tendered by his customers. He must, perforce, do this or lose his trade. Plaintiff was long advised of Meyer's practice in this respect; it made no complaint to Meyer, but indicated its acquiescence by continuing to authorize the sale of bottles to him. The mathematical result of Meyer's practice was that other dairymen, including the defendants, picked up his peculiar bottles, when tendered them, which they must do or lose their customers. Meyer then complained that defendants were using the patented bottle, and that plaintiff was not protecting his market. The defendants offered a simple way out of the impasse; they did not like the plaintiff's bottle because it was difficult to wash by machines designed for the bourgeoise bottle; so they offered to exchange at Meyer's plant, bottle for bottle, the fancy bottles they had been forced to pick up in exchange for their plain ones which Meyer had picked up, or to sell them to Meyer at the market price. If plaintiff, or Meyer, desired only to keep their competitors from using their bottle, no lawsuit was necessary; the exchange suggested would have accomplished that purpose. But Meyer categorically and, we think, arbitrarily declined. He wrote: "No exchange of common sense or old style bottles will be made for Cream Top bottles." He offered to buy them, but for less than the wholesale cost of ordinary bottles.

This action for infringement of the patent was then commenced, not against Meyer with whom plaintiff had contracted and who had put the patented bottles in circulation, but against other dairymen who had picked up the bottles because Meyer had picked up theirs. The issues were referred to Clifford Histed, Esq., as special master. He made comprehensive findings of fact and recommended sound conclusions of law; he re-

turned them to the trial court with an opinion which, in our judgment, is unanswerable. The master's conclusions of fact, approved by the trial court and this court, are:

"a. Meyer Milk Company as part of its business of distributing milk in Kansas City, Kansas, and as an incident thereto, disposes of cream top bottles in consideration either of cash deposit of five cents per bottle or in exchange for other plain bottles.

"b. Thereby the Milk Company permits such cream top bottles to become a subject of purchase, sale and exchange by others and they become a part of the mass of general property in the community.

"c. All of the cream top bottles used by any of the defendant dairymen were bottles which Meyer Company had originally purchased from an authorized manufacturer and which Meyer Company had placed in the channels of trade in the manner referred to.

"d. The circumstance that the bottles found their way into the hands of the defendants herein was a direct and proximate result of the manner in which Meyer Company conducted its business of distributing milk."

The learned and experienced trial court denied exceptions filed to the report, and entered a decree dismissing the bill.

■■ It will be readily seen that if plaintiff prevails, and if Meyer persists in declining to exchange, then the defendants will gradually be forced out of business and Meyer given a monopoly on milk in Kansas City. Defendants cannot, any more than Meyer, insist on a return of identical bottles. Since they must pick up patented bottles in exchange for their bottles which Meyer has picked up, they must either exchange them with Meyer, which he refuses to do, use them, or lose them. If they lose them, they are buying bottles for Meyer. No business can so finance its competitor long. The decree below is therefore right, for the reason that the suit is not brought to exclude defendants from the use of the patented bottle, for that relief was tendered before the suit was brought; the suit must have, therefore, as its object something else; courts do not grant relief which would tend to confer a monopoly on a necessity of life. Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 519, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959.

■■ The decree is right for other reasons. When the plaintiff granted the right to manufacture and sell to Thatcher, and the right of unrestricted use to Meyer, it exhausted

the rights conferred upon it by the patent. To use the oft repeated language of the courts, when a patentee sells a patented article whose value is in its use, it passes without the limit of the monopoly, and the patent laws put no restrictions on the purchaser.[1] When a patentee sells, without valid restrictions, a patented automobile or a shotgun, the buyer may use it or sell it to another without subjecting himself to a suit for infringement. Plaintiff has parted with its rights to manufacture, sell, and use, without restrictions now pertinent; it therefore has nothing left upon which to found this suit. In United States v. Gen. Elec. Co., 272 U. S. 476, 487, 47 S. Ct. 192, 196, 71 L. Ed. 362, Chief Justice Taft quoted with approval Chief Justice White's paraphrase of the opinion of now Chief Justice Hughes, as follows: "In Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502, it was decided that under the general law the owner of movables (in that case, proprietary medicines compounded by a secret formula) could not sell the movables and lawfully by contract fix a price at which the product should afterwards be sold, because to do so would be at one and the same time to sell and retain, to part with and yet to hold, to project the will of the seller so as to cause it to control the movable parted with when it was not subject to his will because owned by another, and thus to make the will of the seller unwarrantedly take the place of the law of the land as to such movables."

Plaintiff relies upon cases where the patentee placed a price limitation in a license to manufacture and sell, United States v. Gen. Elec. Co., 272 U. S. 476, 47 S. Ct. 192, 71 L. Ed. 362, and a District Court case where a sale was restricted by an agreement as to use, Skee Ball Co. v. Cohen (D. C. N. Y.) 286 F. 275. These cases have no bearing on

[1] Bloomer v. McQuewan et al., 14 How. 539, 14 L. Ed. 532; Adams v. Burks, 17 Wall. 453, 21 L. Ed. 700; Paper-Bag Machine Cases, 105 U. S. 766, 26 L. Ed. 959; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500; Keeler v. Standard Folding-Bed Co., 157 U. S. 659, 15 S. Ct. 738, 39 L. Ed. 848; Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 28 S. Ct. 722, 52 L. Ed. 1086; Bauer v. O'Donnell, 229 U. S. 1, 33 S. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150; Straus v. Victor Talking Mach. Co., 243 U. S. 490, 37 S. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955; Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917D, 1187, Ann. Cas. 1918A, 959; Boston Store v. American Graphophone Co., 246 U. S. 8, 23, 38 S. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447; United States v. United Shoe Mach. Co., 247 U. S. 58, 38 S. Ct. 473, 62 L. Ed. 968; United States v. Gen. Elec. Co., 272 U. S. 476, 47 S. Ct. 192, 71 L. Ed. 362; Carbice Corp. v. Am. Patents Corp., 283 U. S. 27, 32, 51 S. Ct. 334, 75 L. Ed. 819.

the case at bar. The plaintiff claims no property right in the bottles; it conferred upon Thatcher the right to manufacture and sell, limited only as to the class to whom sales might be made, and the price to be charged therefor. These restrictions were not violated. Meyer, being in the permitted class, acquired full title to the bottle. He also had the full right to use them in a restricted territory. He exercised the right granted him in the only way it could be exercised, by delivering milk in them. Plaintiff's rights are therefore exhausted.

█ Plaintiff undertakes to read into its private agreement with Meyer a condition on the use which is not in the agreement, to wit, that Meyer will not permit the bottles to pass into the hands of competitors. The point would be of interest if Meyer were the defendant, and the action one for violation of his contract. But it is entirely without merit. When plaintiff granted Meyer the right to use its bottles in Kansas City, it granted the right to use them in the way milk bottles are used in Kansas City. Plaintiff did not stipulate that Meyer should change his established methods of doing business, nor that he should undertake to make over the trade practices by which milk was delivered by all dealers in the territory which plaintiff entered of its own volition. Plaintiff's point comes to this: Meyer violated his contract by parting with possession of the bottle under circumstances which did not insure its return to Meyer. There are two answers: This suit is not against Meyer; second, Meyer's use of the bottles, in the ordinary way in which milk bottles are used in Kansas City and elsewhere, was granted for a consideration agreeable to plaintiff.

█ But plaintiff insists that the court may not consider the customs of the trade in Kansas City, in construing the "right to use in Kansas City" conferred by the Meyer contract. We must, of course, in construing the phrase, consider that milk bottles are used in Kansas City for the purpose of delivering milk; that their use requires that possession at least, of the bottle pass to the customer. Plaintiff insists we may go no further. But there is no rule of law requiring the court to close its eyes to what is known to every one else, including plaintiff, defendants, and all the witnesses, and that is that the usage of the business in Kansas City is that the housewife is not obligated to earmark and return the identical bottle; she may return any other sound bottle or pay five cents. The courts, in determining the extent of plaintiff's grant

to Meyer, not only may but must ascertain how milk bottles are customarily used in Kansas City, for Meyer's "right to use in Kansas City" means the right to use in the ordinary way. Meyer used the bottles in the ordinary and intended way; as an inevitable result, defendants rightfully came into possession of the bottles, and neither plaintiff nor Meyer has any ground for complaint.

Plaintiff's action is devoid of merit, and the decree below is affirmed.