GENERAL MOTORS CORPORATION v. PREFERRED ELECTRIC & WIRE CORPORATION. *

No. 159.

Circuit Court of Appeals, Second Circuit.

Nov. 4, 1935.

*Writ of certiorari denied 56 S. Ct. 381, 80 L. Ed. ——.

Schechter, Lotsch & Sulzberger, of New York City (Theodore S. Kenyon, John L. Lotsch, W. Houston Kenyon, Jr., and Kenyon & Kenyon, all of New York City, of counsel), for appellant.

Drury W. Cooper, of New York City, and Harry W. Lindsey, Jr., of Chicago, Ill. (Thomas J. Byrne, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The decree appealed from holds valid patents to Ratcliff, No. 1,305,165, for a circuit breaker, issued May 27, 1919, application filed February 24, 1917, and direct infringement as to claims 8, 9, and 12 with contributory infringement as to claims 3, 6, 7, 8, 9, and 12; patent to Kindl, reissue No. 18,276, granted December 8, 1931, reissue applied for October 26, 1931, for an ignition timer, claims 1, 2, 3, and 4 contributarily infringed; patent to Berkdoll, No. 1,556,901, granted October 13, 1925, on application filed July 8, 1921, for an ignition device, claims 1, 2, 3, and 4 directly infringed; patent to Kroeger, No. 1,557,207, for an ignition apparatus, granted October 13, 1925, application filed November 20, 1923, claim 3 directly infringed; patent to Kroeger, No. 1,593,339, for an ignition apparatus, granted July 20, 1926, application filed September 18, 1924, claim 1 directly and contributarily infringed; patent to Kettering, No. 1,272,056, for ignition system, granted July 9, 1918, on an application filed August 30, 1915, claims 5, 11, 12, 26, 27, 28, 29, and 30 contributarily infringed.

Appellee manufactures devices as described in the patents as original equipment on motorcars it manufactures, as well as for motorcars others manufacture. It makes the same devices for repair parts and distributes them through a subsidiary corporation.

Appellant sells, to jobbers, service stations, garages, and car owners, a substantial line of repair parts for ignition apparatus. It does not make or sell complete ignition systems, nor igniters, nor timer distributors, nor relatively durable or permanent parts thereof. It sells breaker arms with or without springs, contact brackets, or repair parts in timer distributors of appellee's manufacture. These parts are susceptible to wear and destruction in operation. They are made so as to be readily detachable for replacement. It is the practice to replace rather than repair such parts.

As to contributory infringement of the claims of the patents in suit, we think the rule of Electric Auto Lite Co. v. P. & D. Mfg. Co., 78 F.(2d) 700, 704 (C. C. A. 2, July 8, 1935), is controlling and requires a reversal of the finding below as to contributory infringement of each patent. There, as here, the alleged contributory infringement was the sale to a car owner of wearable parts for replacement in an ignition system. We said that in selling its ignition apparatus, the manufacturer did so expecting the car owner to have service during the life of the car and upon the implied understanding that the car owner is entitled to repair the same by replacing parts. We said: "Indeed, the ignition apparatus is so designed and built as to make it possible to quickly and simply detach, for

replacement purposes, the parts referred to and thus to meet the demands of wear or destruction. In selling parts which enable the car owner to make such repairs, the defendant is protected by the car owner's implied right so to do. Moreover, it has long been recognized that unpatented components of a patented combination, which wear out quickly as compared with the life of the combination as a whole, may be replaced without infringement." The purchaser of a car, with an ignition system, has the right to make repairs, short of reconstruction, necessary to keep it in reasonably good and serviceable condition during its expected life. It is the car owner's right of "repairing partial injuries, * * * and it is no more than that, though it shall be a replacement of an essential part of a combination." Wilson v. Simpson, 9 How. (50 U. S.) 109, 114, 123, 13 L. Ed. 66. See, also, Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189. It is an incident of the rightful use of the purchased car. After purchase, the car owner has an apparatus wholly free from the limits of a monopoly. That it is no infringement to make ordinary repairs or replacements that may reasonably be expected as necessary during the life of the car as a whole has been established by the authorities. Mitchell v. Hawley, 16 Wall. (83 U. S.) 544, 21 L. Ed. 322; Goodyear Shoe Machinery Co. v. Jackson, 112 F. 146, 55 L. R. A. 692 (C. C. A. 1); Thomson-Houston Electric Co. v. Kelsey Electric Specialty Co., 75 F. 1005 (C. C. A. 2). This does not extend to reconstruction for the parties if their bargain did not so contemplate. Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 434, 14 S. Ct. 627, 38 L. Ed. 500; American Cotton Tie Co. v. Simmons, 106 U. S. 89, 1 S. Ct. 52, 27 L. Ed. 79; Gillette Safety Razor Co. v. Standard Razor Co., 64 F.(2d) 6, 8 (C. C. A. 2); Morrin v. Robert White Engineering Co. (C. C. A.) 138 F. 68, modified 143 F. 519 (C. C. A. 2); Davis Electrical Works v. Edison Electric Light Co., 60 F. 276 (C. C. A. 1); Wilson v. Union Tool Co., 265 F. 669 (C. C. A. 9).

Whether the appellant's breaker arms and contact brackets constitute the "gist of the invention" sued on, as suggested in the findings below, is immaterial. Indeed, the gist or essence of the combination of mechanical elements lies in the combination as a whole. Rowell v. Lindsay, 113 U. S. 97, 5 S. Ct. 507, 28 L. Ed. 906; Bullock Electric Co. v. Westinghouse, 129 F. 105 (C. C. A. 6). There was no sale of the whole combination, but parts only. The parts sold were those which bore the brunt of mechanical and electrical wear. They were intentionally made so that they might be quickly detached and replaced when worn. They were relatively perishable and wore out before the device as a whole was worn and, moreover, it was the custom of the trade to effect repairs by replacements of the defective parts.

Therefore it was error to hold that the appellant was guilty of contributory infringement of the claims sued on in the Kettering, Ratcliff, Kindl, and Kroeger, No. 1,593,339, patents.

The Ratcliff patent is claimed to have been directly infringed as to claims 8, 9, and 12. It is for a co-pivotal mounting of the breaker arm and the bracket which holds the stationary contact, so that in adjusting the stationary contact its surface will always be parallel to the movable contact. The inventor testified it was his intention to cause the contact surface of these contact points to be always paralleled and thus in good electrical contact, regardless of their position, and he says, "This is the whole purpose of the device." The patent to Freas, No. 1,165,958 (December 28, 1915), anticipates each of the claims here in suit. Both patents were built upon the same mechanical principle in the art of circuit breakers. Freas shows a control means for constant temperature and has a circuit breaker with the same functions and effect of Ratcliff. Freas, like Ratcliff, has a movable contact arm. Both arms are pivoted on a common center and the respective contacts are adapted to move in the arc of the same circle about the same pivot center. The normally stationary arm and contact are adjustable in Freas as in Ratcliff, Freas using an operating knob and toggle; Ratcliff uses the ordinary adjusting screw. Freas means for holding the normally stationary contact in adjusted position is a spring whereby the lever is kept down taut against the arm. In Ratcliff's the corresponding means is the ordinary set screw. The co-pivotal mount-

**624**

ing of the two levers is the stressed feature of the invention of Freas. His method of construction causes the contacting surfaces of contactors to be always in parallel and thus in good electrical contact, regardless of their position on the scale. This is what Ratcliff testified was the whole purpose of his device. Freas' circuit breaker is identical in its elements and its mechanical principle and in the way those elements function together, with the circuit breaker of Ratcliff. It anticipates each claim sued on.

■ The Berkdoll patent is for a breaker arm. It differs from breaker arms in prior use in slight changes in shape and design. Since 1928 new cars are not using this type. All that is found in it was anticipated by Schwarze and Seeley. Schwarze includes an apertured hub and the flanges of the breaker arm have holes in alinement, and the hub fits tightly within these two holes. A crossbar bridges the space between the two flanges, has the mechanical function of the hook of Berkdoll. It serves as a point of attachment for the hooked inner end of the leaf spring and, like Berkdoll, it has a contact point at the end of the arm remote from the apertured hub. The Schwarze device is built to attain high speed operation.

The Seeley breaker arm consists of a strip of material, that is, metal, one end of which carries the contact member and which, at an intermediate point, is folded or bent around a pivot post, and the short end thus reflexed is bent outwardly to provide a rubbing block or engaging member to contact with the cam member. The arm thus made by bending the strip of material of which the breaker arm is formed in such a way as to fit on the pivot post, and no apertured hub is provided because no insulation is needed between the arm and pivot post in Seeley's ignition system. But bending the strip of material was not new with Berkdoll and there was no invention in providing a well-known apertured hub, if occasion required its use. Claims 1, 2, 3, and 4 of this patent were anticipated by these patents of the prior art.

■ Claim 3 of the Kroeger patent, No. 1,557,207, has been held infringed. This patent relates solely to the material of which the L-shaped block of the breaker arm is composed. It is a rubbing block made of bakelized cloth. L-shaped rubbing blocks of hard fiber are old, as were bakelized cloth rubbing blocks on L-shaped metal brackets. It involved no invention to make use of the old bakelized cloth in the old L-shape or, what amounts to the same thing, to make the old L-shaped rubbing block out of the old bakelized cloth. In July, 1921, the appellee used laminated cloth bakelite mounted on L-shaped metal brackets for rubbing blocks of breaker arms. There is no difference in shape between the rubbing blocks of Schwarze and Kroeger such as would be the basis for a patent. The cloth bakelite material was old and its properties have been tested and results published by the governmental agency. Patentability may not rest on the substitution of bakelite in the place of some other insulating material in a form and shape otherwise old. Dubilier Condenser & Radio Corporation v. Aervox Corporation, 37 F.(2d) 657 (C. C. A. 2); Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co., 272 F. 667 (C. C. A. 6).

■ Kroeger patent, No. 1,593,339, is for an ignition timer containing a breaker arm that is indistinguishable from the prior art except for the fact that the single rivet is used for securing the rubbing block and spring to the breaker arm instead of two rivets as in the prior art. There was no change of function or operation. The only new element of claim 1, sued on, is the single rivet for securing the old leaf spring and the old rubbing block to the old channel web of the breaker arm. These features were old and the claim is invalid.

Decree is reversed, with directions to dismiss the bill, with costs.