**SCHAYER v. R. K. O. RADIO PICTURES, Inc., et al.**

District Court, S. D. New York.
June 29, 1944.

Irving Seidman, of New York City (Samuel Hassen, of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City, for defendants.

BRIGHT, District Judge.

Plaintiff seeks an injunction against, and an accounting by, all of the defendants, except Abraham J. Willner and Wallace & Tiernan Products, Inc., who have not been served, alleging that they have infringed four United States patents No. 1,728,974 for an arcuate film splice, No. 1,734,140 for a film splicing machine, No. 1,734,141 for a film splicer, and No. 1,734,142 for a film splicer and rewinder, the first issued September 24, 1929, and the last three November 5, 1929.

The facts are stipulated. Plaintiff's ownership of the patents and their validity, as well as jurisdiction, are conceded. There is likewise no dispute that the defendant Big U, since March 11, 1932, has been using in New York City seven automatic film splicing and rewinding machines made by the Film Automatic Machine Corporation under the patents in question, the defendant Columbia eight similar machines in New York City since 1937, and eight in Philadelphia since 1938, and the defendant R.K.O. eight machines in New York City since 1937; and that all of the defendants have made payments to the Film Automatic Machine Corporation, and to its successor in title to the machines, for rentals of those machines under rental agreements, from the dates mentioned to the beginning of this suit. The defendant Universal admits in its answer that it received a lease and license to use a specified number of film splicing and rewinding machines made by the Machine Corpora-

tion under the patents, and that such lease continued up to the time of the suit, and that it paid the rental specified thereunder, but it denies in its answers to interrogatories that it is using any such machines. The defendant Hess has been under contract to service, repair and maintain the machines since September 1940 and has done so; that work included the replacement of parts which he obtained from the Machine Corporation and its receiver, or from the defendant Machine Company, or which he made himself.

On December 23, 1936, Film Automatic Machine Corporation (which is not the defendant Film Automatic Machine Co. Inc.), then the owner of the four patents and any and all claims and demands for damages and profits on account of infringement of any thereof, assigned to the Lawyers Trust Company as trustee under a trust indenture dated as of November 1, 1936, "the entire right, title and interest * * * in and to said U. S. Letters Patent * * * and any reissues or extensions thereof, together with all claims and demands * * * for damages or profits on account of past infringement of any of said letters patent * * *; subject, however, to a license reserved by said Film Automatic Machine Corporation to make and use and to sell to others for use or resale apparatus embodying or for practicing any or all said inventions, such reserved right being an unassignable personal right in said Film Automatic Machine Corparation, which said license, however, shall at the option of Lawyers Trust Company, as trustee, terminate automatically immediately in the event of any default on the part of Film Automatic Machine Corporation, under or pursuant to the terms of said trust indenture." The Machine Corporation further covenanted that it had not made any assignment of said patents or granted any license or otherwise parted with any interest under or in said patents or made any agreements so to do other than with the Lawyers Trust Company. The indenture of November 1, 1936, was issued to secure the payment of $500,000 five year 6% notes; the security was the pledge of the four patents and all other patents or patent rights throughout the world then owned or thereafter acquired by the Film Automatic Machine Corporation, free and clear of liens and encumbrances thereon; and gave the trustee,

upon the occurrence of certain defaults, the right to foreclose and sell the property.

The Film Automatic Machine Corporation became financially involved. On or about December 2, 1938, a creditors' action was brought in the United States District Court in New Jersey, and on December 9, 1938, Edward Schwartz was appointed statutory receiver of the corporation.

Subsequently the corporation defaulted under the trust indenture, and the Lawyers Trust Company, as trustee, brought suit in New Jersey Court of Chancery against the corporation and Schwartz as receiver, to foreclose the pledge under the indenture mentioned. A decree was entered by default on January 15, 1940, which, among other things, ordered the sale of the "pledged property" consisting of the four Letters Patent "and all patents or patent rights of whatsoever nature and description, throughout the entire world, now owned or hereafter acquired by the company," by Nicholas LaVecchia, one of the Special Masters in Chancery. LaVecchia sold the same on February 20, 1940, to Preferred Products Company of New York City, the sale was confirmed by the Chancery Court, the Products Company assigned its bid to plaintiff, who, on May 21, 1940, received from LaVecchia as Special Master, a conveyance of the four patents mentioned, with the appurtenances and privileges thereunto belonging or in any way appertaining. On May 20, 1940, the Lawyers Trust Company, as trustee, also assigned to the plaintiff its entire right, title and interest assigned to it in the four Letters Patent and any reissues or extensions thereof together with all claims and demands which it has or may have for damages or profits on account of past infringement of any of said Letters Patent, and the entire right, title and interest throughout the world, assigned to it, in and to the inventions contained in the patents and in any other patent in the United States or in foreign countries. Schwartz, as receiver, at the time, notified the Special Master that he claimed, and the sale should not include, all machines manufactured under the patent wherever located, and all other assets of the Machine Corporation, including machinery, tools and fixtures, shop rights under the patents, and any agreements made by the corporation, or receiver, or any person authorized by the

receiver, for the manufacture of the machines made in accordance with the patents to be sold.

Before the sale, under the Chancery Court decree, the Film Automatic Machine Corporation had made certain lease agreements with the defendants R.K.O., Columbia and Big U, under which it had supplied them with film splicing and winding equipment made and operated in accordance with the patents, and had granted them the right to use the same. Certain rentals were to be paid by the lessees of the machines for their use. Generally, the title to the machines remained in the lessor which was to service and maintain the same. After the sale mentioned, the defendant Film Automatic Machine Co., Inc., the assignee of the purchaser at the receiver's sale below mentioned, made a somewhat similar agreement with the defendant Columbia, which mentions that the purchaser of the patents has asserted a claim that he had the exclusive right to license the use of the machines, and the new Machine Company, last mentioned, agrees to defend and indemnify Columbia against any claims, actions and proceedings which may be instituted against the lessee on account of the use of the machine. Both before and after plaintiff acquired title to the patents, Schwartz, as receiver, received from the lessees payments under the leases mentioned.

On July 21, 1941, the United States District Court in New Jersey instructed Schwartz, as receiver, to sell all of the tangible assets of the Film Automatic Machine Corporation, which included the machines leased as aforesaid, "free and clear of all liens and encumbrances." A public sale was had on August 7, when the assets were sold to A. J. Willner, August 9th the sale was confirmed, and a bill of sale was delivered to the purchaser on August 26, 1941, of all of the right, title and interest of the receiver "in and to all of the tangible assets of Film Automatic Machines Corporation wherever they may be * * * including * * * twenty-four splicing machines located at various places in New York and eight machines in Philadelphia, together with all of the leases, contracts and agreements, oral or written which may be in existence concerning the renting, leasing and use of the said machines" as well as other property. Willner on September 2, 1941, conveyed the property purchased by him to the defendant Film Automatic Machines Co. Inc.

Plaintiff, on the day of that sale, notified Schwartz, as receiver, that the sale to be conducted by the latter was subject to his rights as holder of the patents, and he gave similar notice to the defendant lessees previously mentioned, and that the use by them of the machines was subject to said patents and that they could not be used except by arrangement with him. He was present at the receiver's sale and at the confirmation thereof and made no statement on the record at either time.

The question involved, as I understand it, is whether or not the plaintiff, who purchased on the foreclosure sale under the pledge made to the Lawyers Trust Company as trustee, acquired title to the use of the then existing machines rented to some of the defendants and to the rentals therefrom, and the right to license such use, as against the defendants, or any of them.

The only property assigned to the Lawyers Trust Company as trustee, insofar as material to this controversy, were the four patents, and any damages by reason of any past infringement of them. That assignment was expressly made subject to an unassignable license reserved by the assignor, the then owner of the patents, to make, use and sell to others for use or resale apparatus embodying or for practicing any and all of the inventions, which license was to end on default by the pledgor. It did not convey any other assets, which the record shows included tools, machinery, splicing and winding machines, etc.

Not having conveyed the splicing and winding machines, the Machine Corporation had the right to make, use and sell them for use or resale or to otherwise contract with reference to them. That right was not conferred upon it by any reservation in the pledge; it had it by virtue of its ownership of the machines and it never parted with it.

The Patent Law, 35 U.S.C.A. § 40, granted the owner of the patent, the exclusive right to make, use and vend; it had that right at common law, and the statute merely added the right to exclude others from so doing without its permission. Bloomer v. McQuewan, 14 How. 539, 14 L.Ed. 532; Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S.

502–510, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959; United States v. United Shoe Machinery Co., 247 U.S. 32, 57, 38 S.Ct. 473, 62 L.Ed. 968; United Shoe Machinery Corp. v. United States, 258 U.S. 451–463, 42 S.Ct. 363, 66 L.Ed. 708; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24–35, 43 S.Ct. 254, 67 L.Ed. 516. The reservation, as I have said, added nothing to that. If it was of any effect, it clearly shows that it was not the intention of the Machine Corporation, the pledgor, to part with any machine or other tangible assets it then possessed, but merely to transfer the patents and reserve the right to make use of them until default. That pledgor clearly had the right, in my opinion, to lease the machines to anyone to whom it saw fit upon such terms as it deemed advisable, or to do anything else with it. It did so to the defendants R.K.O., Universal, Columbia and Big U.

The contention is made that the reservation in the assignment was with reference to a license to make, use and sell, and that those words did not contemplate a lease. The answer to that is that the reservation had nothing to do with the machines, which were not pledged, assigned or sold, and, therefore, there was no limitation on the right of the owner to lease.

On December 9, 1938, before there was any default under the trust indenture, the United States District Court in New Jersey, by its receiver, took possession of all of the Machine Corporation's assets. It is not disputed that the receiver obtained all of the title which the Film Automatic Machine Corporation then had. And the receiver's sale, duly had and confirmed, clearly disposed of the leased machines, as well as of the leases, to the assignor of the defendant Film Automatic Machine Co. Inc.

The sale in the Chancery suit, brought by the Lawyers Trust Company, as trustee, did not and could not dispose of any other than the "pledged property," and did not attempt to do so; and the transfer to the plaintiff after that sale conveyed only the four letters patent and the patent rights owned by the pledgor at the time of the pledge. Those transfers do not, in words or substance, attempt to convey more, and certainly do not convey the machines or any right therein.

The four defendants named, having therefore received possession of the machines under instruments which gave them the legal right to use and operate them, executed by the owner, could not be charged with infringement because of that use or because of the failure to pay to the plaintiff, the later owner of the patents, the rentals reserved. Cream Top Bottle Corp. v. Bailes, 10 Cir., 62 F.2d 714–717. Plaintiff's ownership of whatever he received was subsequent to the leases, title to the machines and the leases had previously vested in the receiver, and the pledgee and trustee through whom plaintiff claims, never had received title to either.

Nor can the defendant Hess be liable for infringement, contributory or otherwise. All he did was to repair and maintain the machines and that did not make him liable under the circumstances. General Motors Corp. v. Preferred Electric & Wire Corp., 2 Cir., 79 F.2d 621–623, certiorari denied 296 U.S. 655, 56 S.Ct. 381, 80 L.Ed. 466; Cinema Patents Co. v. Craft Film Laboratories, D.C., 56 F.2d 265, 268.

That the leases have expired, as asserted by plaintiff, does not, in view of the grounds upon which I have placed this decision, seem of any materiality. The expiration of the leases could not change the situation that the plaintiff had no title to the machines; and when the leases did expire, if they did, and which I do not find, the machines were owned by the defendant Machine Company.

The complaint is, therefore, dismissed upon the merits with costs. Findings may be proposed by the defendants within fifteen days, served upon the plaintiff's attorney, who may have ten days in which to object to any thereof, and I will then prepare and file the findings of fact and conclusions of law required by the rules.